IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00184-CV

 

In the Matter of 

the Marriage of

 

Becky L. Padilla,

                                                                      Appellant

and

 

Jimmy H. Padilla,

                                                                      Appellee

 

AND

 

IN
THE INTEREST OF K.E.P., A CHILD

 

 

 



From the 233rd District Court

Tarrant County, Texas

Trial Court No. 233-369656-04

 



MEMORANDUM  Opinion










 

          Jimmy Padilla filed for divorce.  A
status hearing was set and neither Becky Padilla nor her attorney appeared. 
The trial court heard Jimmy’s petition and granted the divorce.  Because the
trial court heard no evidence regarding the valuation of the marital estate, it
abused its discretion in dividing the property.  We reverse and remand.

          Because her last issue is dispositive
of this appeal, we address that issue first.  In her sixth and final issue,
Becky contends that the trial court abused its discretion in making its
division of the property.  Becky preserved this issue for review in her first
motion for new trial.  

          Becky alleges that Jimmy did not
present evidence to the trial court as to the value of any of the personal or
real property, retirement benefits, or liabilities of the marriage.  If a
respondent in a divorce case fails to answer or appear, the petitioner must
present evidence to support the material allegations in the petition.  Osteen
v. Osteen, 38 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2001, no
pet.); see Tex. Fam. Code Ann.
§ 6.701 (Vernon 1998).  See also Mohamed v. Elyan, No.
05-01-02001-CV, 2001 Tex. App. LEXIS 8031 (Tex. App.—Dallas Nov. 8, 2002, no
pet.) (not designated for publication).

          In eight pages of testimony, four were
dedicated to the property division.  Because Becky did not appear at the
hearing, only Jimmy testified.  But Jimmy presented no evidence regarding the
value of any of the property divided by the trial court.  The only value
testified to was a $20,000 loan that Jimmy agreed to be responsible for.  In a
decree of divorce, a trial court must order a division of the marital estate
“in a manner that the court deems just and right, having due regard to the rights
of each party and any children of the marriage.”  Tex. Fam. Code Ann. § 7.001 (Vernon 1998).  The trial court
proceeded with a division of the property, retirement, and liabilities without
having any means to determine whether that division was just and right. 
Therefore, the trial court abused its discretion in making its division of the
estate.  Becky’s sixth issue is sustained.

          Because we sustain Becky’s sixth
issue, we need not discuss her remaining issues.

          The trial court’s judgment is reversed
and, in the interest of justice, the entire case is remanded to the trial court
for further proceedings.

 

                                                                   TOM
GRAY

                                                                   Chief
Justice

 

Before
Chief Justice Gray,

          Justice
Vance, and

          Justice
Reyna

Reversed
and remanded

Opinion
delivered and filed October 5, 2005

[CV06]





United States v. Sharpe, 470 U.S. 675, 682 (1985)) (internal quotation
marks omitted) (alteration in Hiibel); see Terry at 20; Davis
v. State, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).  “[T]he seizure
cannot continue for an excessive period of time . . . .”  Hiibel
at 185-86 (citing Place at 709).

        “In assessing whether a
detention is too long in duration to be justified as an investigative stop,” it
is “appropriate to examine whether the police diligently pursued a means of
investigation that was likely to confirm or dispel their suspicions quickly,
during which time it was necessary to detain the defendant.”  Sharpe, 470
 U.S. at 686 (citing Michigan v. Summers, 452 U.S. 692, 701 n.14
(1981)); see Muehler v. Mena, 544 U.S. 93, 101 (2005); Kothe v.
State, 152 S.W.3d 54, 64 (Tex. Crim. App. 2004).  “[O]nce the original purpose
for the stop is exhausted, police may not unnecessarily detain” persons
“solely in hopes of finding evidence of some other crime.”  Kothe at 64
(emphasis in orig.).  

        In evaluating probable cause
or reasonable suspicion, we consider the “totality of the circumstances.”  Maryland
v. Pringle, 540 U.S. 366, 371-72 (2003) (citing Illinois v. Gates, 462
 U.S. 213, 235 (1983)); United States v. Arvizu, 534 U.S. 266, 273-74 (2002) (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)); Castro
v. State, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007); Torres v. State, 182
S.W.3d 899, 902 (Tex. Crim. App. 2005).  That evaluation may include
consideration of the fact that “[t]he delay in th[e] case was attributable
. . . to the evasive actions of” the defendant.  Sharpe, 470 U.S. at 687-88.

        The manner-and-means
allegations in the information here charged generally that Porter “did
. . . intentionally flee from Calvin Blackshear, a person [Porter]
knew was a peace officer who was attempting lawfully to arrest or detain”
Porter.  (1 C.R. at 1.)  The trial court, in accord with that allegation,
instructed the jury to find Porter guilty if the jury found beyond a reasonable
doubt that Porter “did . . . intentionally flee from Calvin
Blackshear, a person [Porter] knew to be a peace officer who was attempting
lawfully to arrest or detain” Porter.  (Id. at 12); cf. Hooper v.
State, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007); Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997).  The jury generally found Porter “GUILTY
of the offense of evading arrest or detention, as charged in the information.” 
(1 C.R. at 16.)

        Legal Sufficiency.  In
Porter’s first issue, he contends that the evidence was legally insufficient.  

        “In assessing the legal
sufficiency of the evidence . . . , ‘we consider all
of the evidence in the light most favorable to the verdict and determine
whether, based on that evidence and reasonable inferences therefrom, a rational
juror could have found the essential elements of the crime beyond a reasonable
doubt.’”  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App.
2007) (internal footnote omitted) (quoting Hooper, 214 S.W.3d at 13); see
 Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007); Moreno v. State, 755 S.W.2d 866,
867 (Tex. Crim. App. 1988).  “Under a legal sufficiency review, ‘our role is
not to become a thirteenth juror.  This Court may not re-evaluate the weight
and credibility of the record evidence and thereby substitute our judgment for
that of the fact-finder.’”  Williams at 750 (quoting Dewberry v.
State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)).  “Thus, reviewing courts
give deference to ‘the responsibility of the trier of fact to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.’”  Id. (quoting Hooper
at 13) (internal quotation marks omitted); see Tex. Code Crim. Proc. Ann. art. 36.13
(Vernon 2007), art. 38.04 (Vernon 1979).

        Porter argues, “The evidence
is legally insufficient to prove that [Porter] was under a lawful detention
because the detention exceeded the scope of a valid detention.”  (Br. at 17.)  Porter points out that “[t]he arrest occurred after at least fifteen to twenty
minutes of questioning.”  (Id. (citing 1 R.R. at 116).)  

        The State points primarily to
the following evidence.  The arresting officer, Huntsville Police Department
Officer Calvin Blackshear, testified that he detained Porter and three other
persons present at the scene for investigation of five offenses: consuming
alcohol after hours, possession of alcohol by minors, illegal dumping,[2] public intoxication,[3] and unnecessary noise.[4]  See Tex.
Alco. Bev. Code Ann. §§ 105.06(b), 106.05(a) (Vernon 2007); Tex. Health & Safety Code Ann.
§ 365.012(a) (Vernon Supp. 2007); Tex.
Penal Code Ann. § 49.02(a); Huntsville, Tex., Code of Ordinances § 21.01.05(A), (B)(4), (C) (2007), available
at http://‌www‌.municode‌.com/‌Resources/‌gateway‌.asp‌?pid‌=‌14355‌&‌sid‌=‌43. 
Officer Blackshear further testified as follows.  In patrolling an apartment
complex at about 2:00 a.m.,
Officer Blackshear saw several people “drinking and hollering” at the
first-floor balcony or porch of an apartment.  (1 R.R. at 81.)  When Officer
Blackshear approached the apartment, he saw “twenty to thirty,” or “dozens of
beer bottles or cans spread all around the area” adjacent to the porch.  (Id.; id. at 102.)  Officer Blackshear found three other people besides Porter
at the apartment: April Hoyt, John Grueneich, and Antonio Simonetti.  Officer
Blackshear determined that none of the beer cans on the porch was open, and
thus dissipated his suspicion of after-hours drinking.  By talking to and
getting identification from the four and determining their ages, Officer
Blackshear dissipated his suspicion of minors in possession.  By talking to
Porter and the others, Officer Blackshear attempted to investigate the illegal
dumping of the bottles and cans, but had not been able to determine if Porter
or the others were responsible for it.  After talking to the four, Officer
Blackshear determined that Grueneich was the resident of the apartment. 
Officer Blackshear gave Grueneich a citation for unnecessary noise.  Officer
Blackshear observed Porter’s and Simonetti’s demeanors, and determined that
they were intoxicated and determined the degree of their intoxication.  Officer
Blackshear arrested Simonetti for public intoxication by handcuffing him.  When
Porter then turned and attempted to run away, the officers arrested him for
evading arrest or detention.

        Some of the delay during
Porter’s detention, moreover, is attributable to evasive actions by Porter. 
For example, Officer Blackshear testified, when he first approached Porter and
asked for his identification and the identity of the resident of the apartment,
Porter “kept asking [him] what for,” and saying “that he wasn’t going to tell
[him] who lived there.”  (1 R.R. at 82.)  Officer Blackshear further testified
as follows.  While Officer Blackshear was talking to Grueneich about the unnecessary-noise
violation, Porter

continuously started hollering that this is
bull—bull stuff, except he used other words; that [Blackshear] was there harassing
them, that [Blackshear] should be on the border arresting illegal aliens,
because [Blackshear] ha[d]n’t arrested a single one of them yet.  He kept
saying, “no, don’t give me a ticket, don’t give me no F’ing ticket.  You had
better not arrest me mother”—you know what that is.  Just continuously, through
the whole time [Blackshear] was dealing with [Grueneich].

(Id. at 83-84.)  Porter
appeared very “intoxicated,” and “had an extremely aggressive demeanor.”  (Id. at 83.)  When Officer Blackshear approached Porter, Porter said that Blackshear
“had better bring a fifty person SWAT team if [he] c[a]me” near Porter.  (Id. at 84.)  At that point, Officer Blackshear called for other officers to assist
him, and in time Officer Blake Galle and another officer came to the scene.

        Porter concedes that:

·       
“Officer Blackshear identified
five reasons [Porter] was being detained,” namely the five stated above. 
(Porter Br. at 16 (citing 1 R.R. at 85, 114-15).)

 

·       
“Officer Blackshear stated
that his reasonable suspicion to continue to detain [Porter] for littering was
because he ‘hadn’t figured out who did it yet.’”  (Id. at 17 (quoting 1
R.R. at 101-102).)  

 

·       
There was a “back and forth”
between Officer Blackshear and Porter.  (Id. (citing 1 R.R. at 98).)

        Viewing the evidence in the
light most favorable to the verdict, we hold that rational jurors could have
believed beyond a reasonable doubt that the duration of Porter’s detention for
illegal dumping or unnecessary noise was reasonably related to the scope of the
investigation of those and the other offenses, and that he was lawfully
arrested or detained.  The evidence was legally sufficient.

        We overrule Porter’s first
issue.  

        Factual Sufficiency.  In
Porter’s second issue, he contends that the evidence was factually insufficient. 


        “Evidence may be factually
insufficient if: ‘1) it is so weak’” that the verdict is “‘clearly wrong
and manifestly unjust or 2) the adverse finding is against the great
weight and preponderance of the available evidence.’”  Berry v. State, 233
S.W.3d 847, 854 (Tex. Crim. App. 2007) (quoting Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000)); see Watson v. State, 204 S.W.3d
404, 414-15 (Tex. Crim. App. 2006); 
Clewis v. State, 922 S.W.2d 126, 132, 133 (Tex. Crim. App. 1996).  “[T]he
evidence . . . is factually insufficient if it is so weak that the
jury’s verdict seems clearly wrong and manifestly unjust, or” if, “considering
conflicting evidence, the jury’s verdict, though legally sufficient, is
nevertheless against the great weight and preponderance of the evidence.”  Berry at 854 (citing Watson at 414-15); see Rollerson v. State, 227
S.W.3d 718, 724 (Tex. Crim. App. 2007).  “Such a factual sufficiency review
requires the reviewing court to consider all of the evidence.”  Berry at
854 (citing Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App.
2006), cert. denied, 128 S. Ct. 87 (2007)).  “[T]he evidence is
reviewed in a neutral light rather than (as in a legal sufficiency review) in
the light most favorable to the verdict.”  Roberts v. State, 220 S.W.3d
521, 524 (Tex. Crim. App.), cert. denied, 128 S. Ct. 282 (2007); see
Johnson, 23 S.W.3d at 7.  “A clearly wrong and unjust verdict occurs where
the  jury’s finding is manifestly unjust, shocks the conscience, or clearly
demonstrates bias.”  Berry at 854 (citing Sells v. State, 121
S.W.3d 748, 754 (Tex. Crim. App. 2003)); accord Santellan v. State, 939
S.W.2d 155, 164 (Tex. Crim. App. 1997).  “[A]n appellate court must first be
able to say, with some objective basis in the record, that the great weight
and preponderance of the . . . evidence contradicts the jury’s verdict
before it is justified in” reversing for factually insufficient evidence.  Watson
at 417 (emphasis in orig.).

        Porter appears to argue that
the detention of Porter was not justified at its inception.  Porter points
primarily to the following evidence.  “The evidence linking [Porter] to the
litter was the fact that he was near the cans,” but Officer Blackshear “did not
see [Porter] litter.”  (Br. at 19 (citing 1 R.R. at 101, 115).)  Porter denied
to Officer Blackshear that the cans were Porter’s.  Officer Blackshear’s stated
reason for the noise violation was that Porter and Hoyt were “talking back and
forth to each other in a very high tone of voice.”  (Id. at 20 (quoting
1 R.R. at 115).)  Officer Blackshear had not received any complaint concerning
the noise.  Grueneich testified that the four were “talking” and drinking
beer.  (Id. at 21 (quoting 1 R.R. at 135).)  Grueneich testified the
cans were not by the porch.  Grueneich testified that no “loud conversations,”
“hollering,” or “arguments” were taking place when he became aware of Officer
Blackshear’s presence.  (Id. (quoting 1 R.R. at 139).)  Hoyt also
testified that there was no “loud noise” or “hollering” when Officer Blackshear
approached.  (Id. (quoting 1 R.R. at 152).)  Hoyt testified that the
beer cans were not next to the porch, but were five feet or more from the
apartment.  Hoyt testified that Porter offered to pick up the cans.  Porter
testified that he and Hoyt were having a “regular conversation” when Officer
Blackshear approached them, and that no one had complained to them about
noise.  (Id. (quoting 1 R.R. at 165).)  Porter testified that the beer
cans were not “close to the railing of the apartment.”  (Id. (quoting 1
R.R. at 167).)  Porter testified that he did not threaten the officers, but
that Simonetti made the remark about a SWAT team.  Officer Galle corroborated
Officer Blackshear’s testimony concerning what occurred after Galle arrived on
the scene, including the presence and location of the bottles and cans.

        The State points, further,
primarily to the following evidence.  Officer Blackshear testified that the
reasons for his initially detaining Porter were that Porter was on the porch
next to which the beer cans were littered, that the four “were the only ones
outside drinking at that apartment at 2 a.m. in the morning,” and that Porter
was in possession of unopened cans of beer and was intoxicated.  (Br. at 19 (quoting 1 R.R. at 102).)  Officer Blackshear testified that he was also
investigating the four’s “bunch of loud carrying on” and “bunch of loud talking
and hollering.”  (Id. (quoting 1 R.R. at 104).)  Officers Blackshear and
 Galle also testified that Porter continually yelled loudly during his detention. 


        Considering all of this
evidence in a neutral light, we hold that the jury’s implied finding that
Porter’s detention for illegal dumping or unnecessary noise was justified at
its inception, that the duration of his detention was reasonably related to the
scope of the investigation of those and the other offenses, and thus that he
was lawfully arrested or detained, was not clearly wrong or against the great
weight and preponderance of the evidence.  The evidence was factually
sufficient.  

        We overrule Porter’s second
issue.

        Charge.  In
Porter’s third issue, he contends that the trial court erred in denying
Porter’s requested charge pursuant to Texas Code of Criminal Procedure Article
38.23.[5]  See Tex.
Code Crim. Proc. Ann. art. 38.23 (Vernon 2005).  Article 38.23 provides:

       No evidence obtained by an officer or other
person in violation of any provisions of the Constitution or laws of the State
of Texas, or of the Constitution or laws of the United States of America, shall
be admitted in evidence against the accused on the trial of any criminal case.

       In any case where the legal evidence raises
an issue hereunder, the jury shall be instructed that if it believes, or has a
reasonable doubt, that the evidence was obtained in violation of the provisions
of this Article, then and in such event, the jury shall disregard any such
evidence so obtained.

Tex. Code
Crim. Proc. Ann. art. 38.23(a).

        Code of Criminal Procedure
Article 36.14 provides that “in each misdemeanor case tried in a court of
record, the judge shall . . . deliver to the jury . . . a
written charge distinctly setting forth the law applicable to the case
. . . .”  Tex. Code Crim.
Proc. Ann. art. 36.14 (Vernon 2007).  Code of Criminal Procedure Article
36.19, in turn, provides:

       Whenever it appears by the record in any
criminal action on appeal that any requirement of Article[] 36.14
. . . has been disregarded, the judgment shall not be reversed unless
the error appearing from the record was calculated to injure the rights of [the]
defendant, or unless it appears from the record that the defendant has not had
a fair and impartial trial.

Tex. Code
Crim. Proc. Ann. art. 36.19 (Vernon
2007).  

        In Almanza v. Texas, the Texas Court of Criminal Appeals:

concluded that [Article 36.19’s]
language created two separate harm-analysis standards: the first to be used
when a timely objection is made to the charge; the second to be used when no
such objection appears in the record.

       The first standard dictates
that reversal should occur if the defendant made a timely objection and if the
error is “calculated to injure the rights of the defendant.”  [The Court of
Criminal Appeals] ha[s] interpreted this to mean that there must be some harm
to the defendant from the error.  Properly preserved jury-charge error requires
reversal unless it is harmless.

       If the defendant has not made a timely
objection, we apply the second standard, and reversal is not required unless he
has not had a fair trial.

Penry v. State, 178 S.W.3d 782, 788 (Tex. Crim. App. 2005), cert.
denied, 126 S. Ct. 2862 (2006) (Tex. Crim. App. quoting Tex. Code Crim. Proc. Ann. art. 36.19)
(internal footnotes omitted); see Druery v. State, 225 S.W.3d 491, 504
(Tex. Crim. App.), cert. denied, 128 S. Ct. 627 (2007); Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g).  The
Court of Criminal Appeals “ha[s] interpreted” the first standard “to mean that
any harm, regardless of degree, is sufficient to require reversal.”  Druery at
504 (citing Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

        “In making [a harm]
determination, we assess the degree of harm in light of the entire jury charge,
the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel, and all other relevant information
revealed by the record as a whole.”  Ellison v. State, 86 S.W.3d 226,
228 (Tex. Crim. App. 2002) (quoting Almanza, 686 S.W.2d at 171)
(alteration in Ellison); accord Marvis v. State, 36 S.W.3d 878,
880 (Tex. Crim. App. 2001); Hutch, 922 S.W.2d at 171; see Tex. R. App. P. 44.2(b); Ex parte
Smith, 185 S.W.3d 455, 468 (Tex. Crim. App. 2006), reversed on other
grounds sub nom. Smith v. Texas, 127 S. Ct. 1686 (2007).

        The
trial court instructed the jury:

       Our law provides that a person
commits an offense if the person intentionally flees from a person he knows is
a peace officer attempting lawfully to arrest or detain him.

       Our law further provides that a police
officer may stop and briefly detain a person for investigative purposes if the
officer has a reasonable suspicion that some activity out of the ordinary is
occurring or has occurred.

(1 C.R. at 11.)  The trial court instructed
that the jury could find Porter guilty only if the jury found that Porter “did
. . . flee from . . . a peace officer who was attempting
lawfully to arrest or detain” Porter.  (Id. at 12.)  Thus, in finding
Porter guilty of evading arrest or detention, the jury necessarily found that
the arrest or detention of Porter was lawful.  Under the evidence, for the
reasons stated above in our resolution of Porter’s first two issues, the jury
could reasonably have believed that Porter was lawfully arrested or detained
for illegal dumping or unnecessary noise.  Porter’s counsel argued only
somewhat generally that Porter had not been legally arrested or detained.

        Any error in the trial court’s
denial of Porter’s requested instruction on the legality of the arrest or
detention of Porter was harmless.

        We overrule Porter’s third
issue.

        Conclusion.  Having overruled
Porter’s issues, we affirm.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

        Justice Vance, and

        Justice Reyna

Affirmed

Opinion delivered and filed February 27, 2008

Publish

[CR25]









          [1] Porter
also argues that the evidence was insufficient (1) that he “appear[ed] in a public
place” and (2) that he was “intoxicated to the degree that” he “m[ight]
endanger” himself “or another.”  See Tex.
Penal Code Ann. § 49.02(a) (Vernon 2003).  Those arguments concern,
as does much of Porter’s briefing, Porter’s arrest for public intoxication that
arose from the same incident as Porter’s arrest for evading arrest or detention
that is the subject of this appeal.  See id. § 49.02 (Vernon 2003);
(cf. Br.; Reply Br.).  We today dismiss Porter’s attempted appeal
of his conviction for public intoxication.  See Porter v. State, No.
10-07-00137-CR, 2008 Tex. App. LEXIS _____ (Tex. App.—Waco Feb. 27, 2008, no
pet. h.) (not designated for publication) (mem. op.).  We assume without
deciding that the evidence was insufficient that Porter appeared in a public
place.  Because our resolution of Porter’s first and second issues does not
rely on the public-intoxication arrest as the basis for Porter’s arrest for
evading arrest or detention, those arguments by Porter have no effect on our
holding.





          [2] The Texas Health and
Safety Code creates the offense of “littering,” or illegal dumping, in the
following terms:  “A person commits an offense if the person disposes or allows
or permits the disposal of litter . . . at a place that is not an
approved solid waste site, including a place on . . . private
property . . . .”  Tex.
Health & Safety Code Ann. § 365.012(a) (Vernon Supp. 2007); see
id. § 365.011(6)(B)(ii) (Vernon 2001); Celestine v. State, No.
14-05-01043-CR, 2007 Tex. App. LEXIS 1126, at *5 (Tex. App.—Houston [14th
Dist.] Feb. 15, 2007, pet. ref’d) (not designated for publication) (memorandum
op.).





          [3] The Texas Penal Code
creates the offense of public intoxication in the following terms: “A person
commits an offense if the person appears in a public place while intoxicated to
the degree that the person may endanger the person or another.”  Tex. Penal Code Ann. § 49.02(a).





          [4] The Huntsville Code of
Ordinances creates the offense of unnecessary noise in making it an offense
“for any person to make, continue or cause to be made or continued any
excessive, unnecessary or unusually loud noise or any noise which either
annoys, disturbs, injures or endangers the comfort, repose, health, peace or
safety of others, within the corporate limits of the City.”  Huntsville, Tex., Code of Ordinances § 21.01.05(A)
(2007), available at http://‌www‌.municode‌.com/‌Resources/‌gateway‌.asp‌?pid‌=‌14355‌&‌sid‌=‌43. 
By that section

are declared to be loud, disturbing and
unnecessary noises in violation of this section . . . [y]elling,
shouting, whistling, or singing on the public streets, particularly between the
hours of 11:00 p.m. and 7:00 a.m. or at any time or place so as to annoy or
disturb the quiet, comfort, or repose of persons.

Id. (B), (B)(4).





          [5] Porter requested the
instruction in the following terms:  “The one issue you have on the Charge,
Judge, I don’t know whether you’ve inserted a 3823 instruction, but I’m asking
that that be included in the charge.”  (1 R.R. at 177); see Tex. Code Crim. Proc. Ann. art. 38.23
(Vernon 2005).  We assume without deciding that Porter’s request preserves for
appellate review the instruction for which Porter argues on appeal.  Cf. Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2007); Tex. R. App. P. 33.1(a).