OPINION
{¶ 1} Defendant, Larry Neeley, appeals from his conviction and sentence for murder. R.C. 2903.02(B).
 {¶ 2} The offense of which Defendant Neeley was convicted occurred on May 23, 2004. Defendant was drinking beer with four other men on a loading dock. All were seriously intoxicated. When another of the men, David Reed, grabbed Defendant's beer, Defendant asked Reed if he remembered breaking Defendant's nose one or one and one-half years earlier. Reed said he remembered. Defendant replied, "well, remember this," and then kicked Reed between the eyes. Reed fell, and when he sat up Reed threatened to "beat (Defendant's) ass," even though Reed was highly intoxicated and barely able to stand. Defendant then began hitting and kicking Reed while he lay on the floor of the loading dock. Reed repeated his threats to "beat (Defendant's) ass" while Defendant struck him, but Reed took no aggressive action. Defendant fled the scene, leaving Reed lying unconscious on the floor of the loading dock.
 {¶ 3} Another of the men who was there, Donald Corbett, called 911. Reed was unconscious when paramedics arrived. He was taken to Miami Valley Hospital, where he died thirty-six hours later. The cause of death was blunt force trauma to Reed's head. Reed's head injuries were consistent with being kicked. He sustained fifteen to seventeen separate blows to his head, face and limbs.
 {¶ 4} Donald Corbett also spoke with Dayton Police Officer Matthew Kennard concerning the incident. Corbett identified Defendant Neeley as Reed's assailant. Officer Kennard then issued a "lock-up broadcast" for Defendant Neeley's arrest. Two nights later, Neeley was arrested after-hours in Island Metropark by a park ranger. When Defendant's identity was determined, Officer Kennard was called and came to the scene and took Neeley into custody. Neeley waived his rights and agreed to be interviewed.
 {¶ 5} Defendant told Officer Kennard that Reed had made him angry when he grabbed Defendant's beer, so he hit Reed between the eyes and continued hitting Reed until Reed stayed down. Defendant repeated this same story when questioned by Detective Doyle Burke. Detective Burke took Defendant's shoes after Defendant said those were the same shoes he was wearing when he kicked Reed. Reed's DNA was found in blood on Defendant's right shoe.
 {¶ 6} Defendant was indicted on one count of murder in violation of R.C. 2903.02(B). Defendant filed a motion to suppress his statements to police and the physical evidence, which the trial court denied after a hearing. Following a jury trial, Defendant was found guilty of murder as charged. The trial court sentenced Defendant to a term of incarceration of fifteen years to life.
 {¶ 7} Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 8} "APPELLANT WAS DENIED A FAIR TRIAL THROUGH THE TRIAL COURT'S FAILURE TO PROVIDE THE REQUESTED VOLUNTARY MANSLAUGHTER JURY INSTRUCTION."
 {¶ 9} A trial court must fully and completely give all instructions relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder. State v.Comen (1990), 50 Ohio St.3d 206. If under any reasonable view of the evidence it is possible to find the defendant not guilty of a greater offense with which he is charged and guilty instead of a lesser offense, an instruction on the lesser offense must be given. State v. Wengatz (1984), 14 Ohio App.3d 316. Where the evidence in a criminal case would support a verdict of guilty by the jury of a lesser offense which is included in the greater offense for which the Defendant was tried, it is prejudicial error for the trial court to refuse a defense request to instruct the jury that it may instead convict the defendant of the lesser offense. State v. Parra (1980), 61 Ohio St.2d 236.
 {¶ 10} Defendant was charged with the murder of David Reed in violation of R.C. 2903.02(B), which provides:
 {¶ 11} "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or2903.04 of the Revised Code." The predicate offense for Reed's murder was felonious assault.
 {¶ 12} At the close of the State's case Defendant requested the trial court to instruct the jury on the lesser included offense of voluntary manslaughter in accordance with R.C.2903.03. That section provides:
 {¶ 13} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy."
 {¶ 14} Voluntary manslaughter is an offense of inferior degree to murder. State v. Shane (1992), 63 Ohio St.3d 630,632. The test for whether the trial court should instruct the jury on voluntary manslaughter when the defendant is charged with murder is the same test applied when an instruction on any lesser included offense is sought. Id. The instruction must be given when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter. Id.
 {¶ 15} The principal difference between murder and voluntary manslaughter is that voluntary manslaughter involves as a mitigating element: some serious provocation by the victim which is reasonably sufficient to incite a defendant to use deadly force. State v. Thomas (Jan. 10, 2003), Montgomery App No. 19131. To be serious, the provocation must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Shane; State v. Mack, 82 Ohio St.3d 198,1998-Ohio-375. Words alone are not sufficient, in most situations, to incite the use of deadly force. Shane; Thomas.
 {¶ 16} Neither Reed's alleged threats to "kick (Defendant's) ass" after Defendant had brutally assaulted him nor Defendant's alleged act of grabbing Defendant's beer were reasonably sufficient to arouse the passions of an ordinary person beyond his or her control so as to justify the deadly force that Defendant Neeley used against Reed, particularly when, as the evidence clearly demonstrates, Reed was too drunk to make good on his threats, which in any event were in response to Defendant's attack on Reed. The trial court so found, and on that finding it denied Defendant's requested instruction on voluntary manslaughter as a lesser-included offense of murder, with which Defendant was charged. No error is demonstrated.
 {¶ 17} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 18} "APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL DUE TO ADMISSION OF EVIDENCE GAINED AGAINST HIM IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS."
 {¶ 19} Defendant Neeley moved to suppress evidence of statements he made and other evidence that was obtained from him after his arrest, arguing that officers lacked probable cause for the arrest. The trial court denied the motion.
 {¶ 20} Island Metropark closes at dusk. Defendant was found there by a park ranger at 3:00 a.m., riding a bicycle without lights after he was almost struck by a car on a public street that runs through the park. These violations were sufficient to allow the park ranger to stop and detain Defendant. Whren v.United States (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed. 3d 89; Dayton v. Erickson, 76 Ohio St.3d 3, 1996-Ohio-431. It was in the course of that detention that the park ranger learned Defendant's identity. Being aware of Officer Kennard's "lock-up broadcast," the park ranger caused Officer Kennard to be called to the scene, where he then arrested Defendant.
 {¶ 21} Defendant argues that his warrantless arrest was illegal because it was not supported by probable cause. We disagree.
 {¶ 22} A warrantless arrest in a public place for a felony, if supported by probable cause, does not violate the Fourth Amendment. Maryland v. Pringle (2003), 540 U.S. 366,124 S.Ct. 795; State v. Cranford (April 15, 2005), Montgomery App. No. 20633, 2005-Ohio-1904. Probable cause exists when the arresting officer has sufficient information from a reasonably trustworthy source to warrant a prudent person in believing that the suspect has committed a crime. State v. Otte, 74 Ohio St.3d 355,1996-Ohio-108; Cranford, supra. Whether probable cause exists is determined from the totality of the facts and circumstances.Id. An eyewitness identification will constitute probable cause unless at the time of the arrest there is some apparent reason for the officer to disbelieve the eyewitness. Ahlers v. Schebil
(C.A. 6, 1999), 188 F.3d 365, 370.
 {¶ 23} Defendant concedes that an eyewitness account can form the basis for probable cause, but argues that Donald Corbett's account of the assault on David Reed may not have been reliable because Corbett's perception may have been impaired by his intoxication.
 {¶ 24} When Officer Kennard investigated the assault on Reed he spoke to Donald Corbett, who had witnessed the attack. Corbett told Officer Kennard that it was Defendant who assaulted David Reed. The evidence demonstrates that Corbett had known David Reed for about fours years and Defendant for fifteen years. That Reed had been assaulted was plainly demonstrated by his injuries. Though Corbett was intoxicated, nothing in this record suggests that Officer Kennard had reason to disbelieve Corbett's identification of Defendant as the person who had attacked Reed. Defendant's arrest for felonious assault was supported by probable cause and, therefore, no violation of his Fourth Amendment rights is shown. The trial court properly denied Defendant's motion to suppress evidence.
 {¶ 25} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 26} "APPELLANT WAS DENIED DUE PROCESS, EQUAL PROTECTION, AND A FAIR TRIAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 27} In order to demonstrate ineffective assistance of trial counsel a defendant must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation, and that Defendant was prejudiced by counsel's performance; that is, there is a reasonable probability that but for counsel's unprofessional errors, the result of Defendant's trial or proceeding would have been different.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 28} Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance.Id. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel.Id.
 {¶ 29} Defendant first complains that his counsel performed deficiently because he did not request appointment of an expert to evaluate David Reed's medical condition and the medical evidence and reports to determine whether the level of Reed's intoxication, in addition to the medical procedures and surgery Reed underwent, may have contributed to Reed's death.
 {¶ 30} Due process requires that an indigent criminal defendant be provided funds to obtain expert assistance at State expense only where the trial court finds, in the exercise of its sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that the denial of the requested expert assistance would result in an unfair trial.State v. Mason, 82 Ohio St.3d 144, 1998-Ohio-370.
 {¶ 31} The evidence, which is fairly straightforward, demonstrates that Reed did not die as a result of the alcohol in his system or the medical treatment he received. Rather, he died because of traumatic brain injury, swelling of the brain caused by blunt force trauma to the head. Donald Corbett testified that he saw Defendant kick Reed in the head like he was kicking a football, and that Defendant continued hitting and kicking Reed until Reed was unconscious. Defendant admitted to police that he hit and kicked Reed several times.
 {¶ 32} By knowingly causing serious physical harm to Reed, repeatedly hitting him and kicking him in the head, which proximately resulted in Reed's death, Defendant was criminally responsible for Reed's murder. R.C. 2903.02(B), 2903.11 (A)(1). Generally, one who inflicts a fatal injury upon another is criminally responsible for that person's death, regardless of whether different or more skillful medical treatment would have saved the person's life, absent gross negligence or willful maltreatment of the patient by medical personnel which is shown to be an independent, intervening cause of death. State v.Johnson (1978), 56 Ohio St.2d 35; State v. Beaver (1997),119 Ohio App.3d 385. There is nothing in the record which even remotely suggests that possibility in this case.
 {¶ 33} Because this record does not contain a basis to make a particularized showing of a reasonable probability that a medical expert would have aided his defense, Defendant was not entitled to such an expert at State expense. Therefore, defense counsel did not perform deficiently by failing to request the assistance of a medical expert.
 {¶ 34} Defendant also claims that counsel performed deficiently when he conducted only a brief cross-examination of the State's DNA expert, who testified about DNA belonging to David Reed that was recovered from Defendant's shoe in the form of bloodstains. Defendant does not indicate what questions defense counsel should have but did not ask the expert witness.
 {¶ 35} We agree with the State that defense counsel may have made a sound tactical decision to limit the cross-examination of the DNA expert in order to limit the jury's exposure to the obvious implications of such evidence; that Defendant kicked David Reed in the face and head so violently as to get Reed's blood on his shoe in the process. Counsel's trial strategy, even if questionable or flawed, does not constitute ineffective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45.
 {¶ 36} Defendant next complains that his counsel performed deficiently because he failed to object to certain evidence and arguments presented by the State. First, Defendant complains about counsel's failure to object to portions of the State's closing argument, wherein the prosecutor indicated that through Defendant's cross-examination of the witnesses, notably Donald Corbett, Defendant had attempted to avoid responsibility for his conduct in several ways. First, by implying that it was the victim's own fault that he died because he kept "mouthing off" to Defendant and continued trying to get back up every time Defendant hit or kicked him. Second, that it was Donald Corbett's fault that the victim died because Corbett did not prevent Defendant from assaulting the victim. That Defendant's attorney pursued that strategy is supported by the record. To the extent that they represent the prosecutor's interpretation of the evidence and the defense strategy, which the prosecutor asked the jury to reject, the remarks are not improper. Thus, defense counsel did not perform deficiently by failing to object to them.
 {¶ 37} Next, Defendant complains because counsel failed to object when the coroner testified that he learned from reading the hospital records that David Reed's nose was broken. Even assuming that this testimony was hearsay and that counsel's failure to object to it constituted deficient performance, Defendant nevertheless suffered no prejudice. Reed's traumatic brain injury included swelling, which resulted from blunt force trauma to the head, causing his death. Given the severity of those injuries, the fact that the jury also learned that Reed suffered a broken nose lacks significance. There is no reasonable probability that had the jury not learned about Reed's broken nose Defendant would have been acquitted of the murder charge. Ineffective assistance of counsel has not been demonstrated.
 {¶ 38} Finally, Defendant complains that counsel performed deficiently when he failed to object on two occasions when two of the State's witnesses, the coroner and the DNA expert, consulted their written reports during their testimony. The coroner consulted his report in reference to victim David Reed's age. The State's DNA witness referred to his report regarding the profile he obtained when he subjected blood from Defendant's right shoe to DNA testing. In both cases, the witness' memory was refreshed, enabling the witness to testify from his refreshed recollection.
 {¶ 39} Evid.R. 612 permits writings to be used to refresh memory while the witness is testifying. That is what occurred here. We see no error merely because the witness did not declare what was already obvious: that the witness' memory had been refreshed by his report. Defense counsel did not perform deficiently by failing to object to the fact that two of the State's witnesses consulted their written reports in order to refresh their recollection while testifying. No ineffective assistance of counsel is demonstrated.
 {¶ 40} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 41} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL THROUGH PROSECUTORIAL MISCONDUCT."
 {¶ 42} The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. Statev. Bey, 85 Ohio St.3d 487, 493, 1999-Ohio-283. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. Id.
 {¶ 43} Generally, prosecutors are entitled to considerable latitude in opening and closing arguments. Maggio v. Cleveland
(1949), 151 Ohio St. 136; State v. Ballew, 76 Ohio St.3d 244,1996-Ohio-81. A prosecutor may freely comment in closing argument on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom. State v. Lott
(1990), 51 Ohio St.3d 160, 165. In determining whether the prosecutor's remarks were prejudicial, the State's argument must be viewed in its entirety. Ballew, supra.
 {¶ 44} During closing argument the prosecutor asked the jury to consider the questions defense counsel had asked the State's witnesses during cross-examination, and the prosecutor argued that the point of those questions was to suggest that someone other than Defendant was responsible for Reed's death. In that same vein, the prosecutor also commented that Defendant doesn't realize that our lives are dictated by the choices we make. An examination of the trial record reveals that through cross-examination of the State's witnesses, most notably Donald Corbett, Defendant suggested or implied that other people bore or shared responsibility for Reed's death, including Reed himself because he taunted Defendant by verbally threatening him, and Donald Corbett because he did not prevent Defendant from beating Reed.
 {¶ 45} Clearly, Defendant had a right to cross-examine the State's witnesses, but that does not preclude the State from asking the jury to reject the theory the Defendant asked the jury to adopt through questions his attorney asked, that persons other than Defendant were to blame for Reed's death. The prosecutor's remarks were not improper but rather a fair comment on the defense theory in this case.
 {¶ 46} The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
Brogan, J. And Wolff, J., concur.