# MARYLAND *v.* PRINGLE

No. 02–809.   Argued November 3, 2003—Decided December 15, 2003

REHNQUIST, C. J., delivered the opinion for a unanimous Court.

*Gary E. Bair*, Solicitor General of Maryland, argued the cause for petitioner. With him on the briefs were *J. Joseph Curran, Jr.*, Attorney General, and *Kathryn Grill Graeff* and *Shannon E. Avery*, Assistant Attorneys General.

*Sri Srinivasan* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Olson, Assistant Attorney General Chertoff, Deputy Solicitor General Dreeben*, and *Deborah Watson*.

*Nancy S. Forster* argued the cause for respondent. With her on the brief were *Stephen E. Harris* and *Sherrie Glasser*.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

In the early morning hours a passenger car occupied by three men was stopped for speeding by a police officer. The

---

*Briefs of *amici curiae* urging reversal were filed for the State of Ohio et al. by *Jim Petro*, Attorney General of Ohio, *Douglas R. Cole*, State Solicitor, *Stephen P. Carney*, Senior Deputy Solicitor, and *Diane Richards Brey*, Deputy Solicitor, and by the Attorneys General for their respective jurisdictions as follows: *William H. Pryor, Jr.*, of Alabama, *Gregg Renkes* of Alaska, *Christopher L. Morano* of Connecticut, *M. Jane Brady* of Delaware, *Mark J. Bennett* of Hawaii, *Lisa Madigan* of Illinois, *Richard P. Ieyoub* of Louisiana, *Michael A. Cox* of Michigan, *Jeremiah W. (Jay) Nixon* of Missouri, *Mike McGrath* of Montana, *Brian Sandoval* of Nevada, *Patricia A. Madrid* of New Mexico, *W. A. Drew Edmondson* of Oklahoma, *Anabelle Rodríguez* of Puerto Rico, *Henry Dargan McMaster* of South Carolina, *Larry Long* of South Dakota, *Greg Abbott* of Texas, *Mark L. Shurtleff* of Utah, *Jerry W. Kilgore* of Virginia, and *Darrell V. McGraw, Jr.*, of West Virginia; and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger* and *Charles L. Hobson*.

*Steven R. Shapiro* and *Lisa Kemler* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging affirmance.

officer, upon searching the car, seized $763 of rolled-up cash from the glove compartment and five glassine baggies of cocaine from between the back-seat armrest and the back seat. After all three men denied ownership of the cocaine and money, the officer arrested each of them. We hold that the officer had probable cause to arrest Pringle—one of the three men.

At 3:16 a.m. on August 7, 1999, a Baltimore County Police officer stopped a Nissan Maxima for speeding. There were three occupants in the car: Donte Partlow, the driver and owner, respondent Pringle, the front-seat passenger, and Otis Smith, the back-seat passenger. The officer asked Partlow for his license and registration. When Partlow opened the glove compartment to retrieve the vehicle registration, the officer observed a large amount of rolled-up money in the glove compartment. The officer returned to his patrol car with Partlow's license and registration to check the computer system for outstanding violations. The computer check did not reveal any violations. The officer returned to the stopped car, had Partlow get out, and issued him an oral warning.

After a second patrol car arrived, the officer asked Partlow if he had any weapons or narcotics in the vehicle. Partlow indicated that he did not. Partlow then consented to a search of the vehicle. The search yielded $763 from the glove compartment and five plastic glassine baggies containing cocaine from behind the back-seat armrest. When the officer began the search the armrest was in the upright position flat against the rear seat. The officer pulled down the armrest and found the drugs, which had been placed between the armrest and the back seat of the car.

The officer questioned all three men about the ownership of the drugs and money, and told them that if no one admitted to ownership of the drugs he was going to arrest them all. The men offered no information regarding the owner-

ship of the drugs or money. All three were placed under arrest and transported to the police station.

Later that morning, Pringle waived his rights under *Miranda* v. *Arizona*, 384 U. S. 436 (1966), and gave an oral and written confession in which he acknowledged that the cocaine belonged to him, that he and his friends were going to a party, and that he intended to sell the cocaine or "[u]se it for sex." App. 26. Pringle maintained that the other occupants of the car did not know about the drugs, and they were released.

The trial court denied Pringle's motion to suppress his confession as the fruit of an illegal arrest, holding that the officer had probable cause to arrest Pringle. A jury convicted Pringle of possession with intent to distribute cocaine and possession of cocaine. He was sentenced to 10 years' incarceration without the possibility of parole. The Court of Special Appeals of Maryland affirmed. 141 Md. App. 292, 785 A. 2d 790 (2001).

The Court of Appeals of Maryland, by divided vote, reversed, holding that, absent specific facts tending to show Pringle's knowledge and dominion or control over the drugs, "the mere finding of cocaine in the back armrest when [Pringle] was a front seat passenger in a car being driven by its owner is insufficient to establish probable cause for an arrest for possession." 370 Md. 525, 545, 805 A. 2d 1016, 1027 (2002). We granted certiorari, 538 U. S. 921 (2003), and now reverse.

Under the Fourth Amendment, made applicable to the States by the Fourteenth Amendment, *Mapp* v. *Ohio*, 367 U. S. 643 (1961), the people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause . . . ." U. S. Const., Amdt. 4. Maryland law authorizes police officers to execute warrantless arrests, *inter alia*, for felonies committed in an officer's presence or where an officer has probable cause to believe that a felony

has been committed or is being committed in the officer's presence. Md. Ann. Code, Art. 27, § 594B (1996) (repealed 2001). A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause. *United States* v. *Watson,* 423 U. S. 411, 424 (1976); see *Atwater* v. *Lago Vista,* 532 U. S. 318, 354 (2001) (stating that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender").

It is uncontested in the present case that the officer, upon recovering the five plastic glassine baggies containing suspected cocaine, had probable cause to believe a felony had been committed. Md. Ann. Code, Art. 27, § 287 (1996) (repealed 2002) (prohibiting possession of controlled dangerous substances). The sole question is whether the officer had probable cause to believe that Pringle committed that crime.[1]

The long-prevailing standard of probable cause protects "citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime," while giving "fair leeway for enforcing the law in the community's protection." *Brinegar* v. *United States,* 338 U. S. 160, 176 (1949). On many occasions, we have reiterated that the probable-cause standard is a " 'practical, nontechnical conception' " that deals with " 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Illinois* v. *Gates,* 462 U. S. 213, 231 (1983) (quoting *Brinegar, supra,* at 175–176); see, *e. g., Ornelas* v. *United States,* 517 U. S. 690, 695 (1996); *United States* v. *Sokolow,* 490 U. S. 1, 7–8 (1989). "[P]robable cause is a fluid

---

[1] Maryland law defines "possession" as "the exercise of actual or constructive dominion or control over a thing by one or more persons." Md. Ann. Code, Art. 27, § 277(s) (1996) (repealed 2002).

concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U. S., at 232.

The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. See *ibid.; Brinegar*, 338 U. S., at 175. We have stated, however, that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt," *ibid.* (internal quotation marks and citations omitted), and that the belief of guilt must be particularized with respect to the person to be searched or seized, *Ybarra* v. *Illinois*, 444 U. S. 85, 91 (1979). In *Illinois* v. *Gates*, we noted:

> "As early as *Locke* v. *United States*, 7 Cranch 339, 348 (1813), Chief Justice Marshall observed, in a closely related context: '[T]he term "probable cause," according to its usual acceptation, means less than evidence which would justify condemnation . . . . It imports a seizure made under circumstances which warrant suspicion.' More recently, we said that 'the *quanta* . . . of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. *Brinegar*, 338 U. S., at 173. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the *evidence, useful in formal trials, have no place in the* [probable-cause] decision." 462 U. S., at 235.

To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause, *Ornelas, supra,* at 696.

In this case, Pringle was one of three men riding in a Nissan Maxima at 3:16 a.m. There was $763 of rolled-up cash

in the glove compartment directly in front of Pringle.[2]    Five plastic glassine baggies of cocaine were behind the back-seat armrest and accessible to all three men.    Upon questioning, the three men failed to offer any information with respect to the ownership of the cocaine or the money.

We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus, a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly.

Pringle's attempt to characterize this case as a guilt-by-association case is unavailing.    His reliance on *Ybarra* v. *Illinois, supra,* and *United States* v. *Di Re,* 332 U. S. 581 (1948), is misplaced.    In *Ybarra,* police officers obtained a warrant to search a tavern and its bartender for evidence of possession of a controlled substance.    Upon entering the tavern, the officers conducted patdown searches of the customers present in the tavern, including Ybarra.    Inside a cigarette pack retrieved from Ybarra's pocket, an officer found six tinfoil packets containing heroin.    We stated:

"[A] person's mere propinquity to others independently suspected of criminal activity does not, without more,

---

[2] The Court of Appeals of Maryland dismissed the $763 seized from the glove compartment as a factor in the probable-cause determination, stating that "[m]oney, without more, is innocuous."    370 Md. 524, 546, 805 A. 2d 1016, 1028 (2002).    The court's consideration of the money in isolation, rather than as a factor in the totality of the circumstances, is mistaken in light of our precedents.    See, *e. g., Illinois* v. *Gates,* 462 U. S. 213, 230–231 (1983) (opining that the totality of the circumstances approach is consistent with our prior treatment of probable cause); *Brinegar* v. *United States,* 338 U. S. 160, 175–176 (1949) ("Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed").    We think it is abundantly clear from the facts that this case involves more than money alone.

give rise to probable cause to search that person. *Sibron* v. *New York*, 392 U. S. 40, 62–63 (1968). Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." 444 U. S., at 91.

We held that the search warrant did not permit body searches of all of the tavern's patrons and that the police could not pat down the patrons for weapons, absent individualized suspicion. *Id.*, at 92.

This case is quite different from *Ybarra*. Pringle and his two companions were in a relatively small automobile, not a public tavern. In *Wyoming* v. *Houghton*, 526 U. S. 295 (1999), we noted that "a car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Id.*, at 304–305. Here we think it was reasonable for the officer to infer a common enterprise among the three men. The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him. In *Di Re*, a federal investigator had been told by an informant, Reed, that he was to receive counterfeit gasoline ration coupons from a certain Buttitta at a particular place. The investigator went to the appointed place and saw Reed, the sole occupant of the rear seat of the car, holding gasoline ration coupons. There were two other occupants in the car: Buttitta in the driver's seat and Di Re in the front passenger's seat. Reed informed the investigator that Buttitta had given him counterfeit coupons. Thereupon, all three men were arrested and searched. After noting that the officers had no information implicating

Di Re and no information pointing to Di Re's possession of coupons, unless presence in the car warranted that inference, we concluded that the officer lacked probable cause to believe that Di Re was involved in the crime. 332 U. S., at 592–594. We said "[a]ny inference that everyone on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person." *Id.*, at 594. No such singling out occurred in this case; none of the three men provided information with respect to the ownership of the cocaine or money.

We hold that the officer had probable cause to believe that Pringle had committed the crime of possession of a controlled substance. Pringle's arrest therefore did not contravene the Fourth and Fourteenth Amendments. Accordingly, the judgment of the Court of Appeals of Maryland is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*