**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 04-1075**

―――――――――

SHAWNDRIA SMITH,

Plaintiff - Appellee,

versus

MCCLUSKEY, Officer,

Defendant - Appellant.

―――――――――

**No. 04-1181**

―――――――――

SHAWNDRIA SMITH,

Plaintiff - Appellant,

versus

MCCLUSKEY, Officer,

Defendant - Appellee.

―――――――――

Appeals from the United States District Court for the District of
South Carolina, at Florence.  C. Weston Houck, Senior District
Judge.  (CA-02-286-12-4)

―――――――――

Argued:  December 2, 2004          Decided:  March 11, 2005

―――――――――

Before WIDENER, NIEMEYER, and GREGORY, Circuit Judges.

―――――――――

Affirmed in part and reversed in part by unpublished per curiam opinion. Judge Gregory wrote an opinion concurring in the judgment.

––––––––––––

**ARGUED:** Cynthia Graham Howe, VAN OSDELL, LESTER, HOWE & JORDAN, P.A., Myrtle Beach, South Carolina, for Officer McCluskey. William Gary White, III, Columbia, South Carolina, for Shawndria Smith. **ON BRIEF:** James B. Van Osdell, VAN OSDELL, LESTER, HOWE & JORDAN, P.A., Myrtle Beach, South Carolina, for Officer McCluskey.

––––––––––––

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Shawndria Smith was arrested on June 17, 2001, in Myrtle Beach, South Carolina, by Myrtle Beach police officer Shon McCluskey for violating a state statute prohibiting pedestrians from walking in a roadway where a sidewalk is provided. Based on Smith's conduct following his arrest, Smith was also charged with violation of a Myrtle Beach disorderly conduct ordinance. A jury subsequently acquitted Smith of both charges.

Smith commenced this action against Officer McCluskey under 42 U.S.C. § 1983, alleging First and Fourth Amendment violations in conjunction with his arrest and the charges filed against him. Smith alleged that McCluskey violated (1) his Fourth Amendment rights to be free from false arrest, malicious prosecution, the use of excessive force, and warrantless arrest by arresting him without probable cause and (2) his First Amendment right to challenge verbally an arrest by subsequently charging him with disorderly conduct.

On Officer McCluskey's motion for summary judgment based on qualified immunity, the district court concluded that McCluskey had probable cause to arrest Smith and therefore was immune from the Fourth Amendment arrest-related claims. Analyzing the disorderly conduct charge as a second "arrest," however, the district court concluded that Officer "McCluskey could not reasonably have believed that he had probable cause to arrest"

Smith for disorderly conduct. The court accordingly denied Officer McCluskey's motion for qualified immunity with respect to the disorderly conduct "arrest." Because we conclude that Officer McCluskey was entitled to qualified immunity from all of Smith's claims, we affirm in part and reverse in part.

I

Smith, a 25-year old truck driver, arrived in Myrtle Beach, South Carolina on Friday, June 15, 2001, to make a delivery and decided to stay for the weekend. On Sunday evening, June 17, Smith was passing time at Mother Fletcher's, a bar located on the east side of Ocean Boulevard, with other bar patrons whom he had befriended. At the time, the area around Mother Fletcher's was particularly crowded because it was "Grad Week," when large numbers of high school students descend upon Myrtle Beach to celebrate the end of the school year.

One of the bar patrons whom Smith had befriended purchased some Mardi-Gras-type beads from a nearby store, and he and Smith began handing out the beads in front of Mother Fletcher's to passersby on Ocean Boulevard in exchange for "a hug" or "a kiss on the cheek or something." After Smith had placed a set of beads around the neck of a woman riding on the back of a motorcycle stopped on Ocean Boulevard and was headed back toward Mother Fletcher's, Officer McCluskey approached him.

-4-

According to Smith, Officer McCluskey advised him that he could receive a citation for having stepped into traffic, and when Smith asked, "What do you mean?", McCluskey replied, "I don't have to explain nothing to you." Then another officer handcuffed Smith from behind. Smith maintains that he never actually set foot on the paved portion of the roadway, because the motorcycle was pulled over, or that, at most, he might have stepped down onto the concrete portion of the roadway that forms its gutter and curb.

According to Officer McCluskey, Smith "walked right . . . onto the road, held up his hand to stop traffic in the north bound lane, and walked down Ocean Boulevard between the two north bound lanes of traffic" before placing the beads on the motorcycle passenger. McCluskey maintains that he approached Smith while Smith was still in the roadway and that when he directed Smith to return to the sidewalk, Smith cursed him, stating, "What the f--k are you talking about? Leave me the f--k alone!"

As additional police officers arrived at the scene and Smith was taken around to the beach access alongside Mother Fletcher's, Smith continued to question the reasons for his arrest. According to Smith, Officer McCluskey responded by questioning whether Smith had been drinking, to which Smith replied that he had had one beer earlier with dinner but that he was not drunk and would be willing to take a Breathalyzer test. McCluskey allegedly ended the exchange by telling Smith, "Shut your mouth. We don't

-5-

want to hear nothing else out of you." Officer McCluskey disputes that he made these statements and recalls that Smith "began to yell and act disorderly, slurring his words." According to Officer McCluskey, "[d]rool was coming out of [Smith's] mouth," and he "could smell alcohol on [Smith's] breath."

It is undisputed that at this point Smith started yelling out something about "Rodney King." Officer McCluskey recalls that a handcuffed Smith kept trying to stand up, while the arresting officers kept directing him to remain seated on the curb along the beach access. McCluskey states that Smith, as he resisted, continually cursed and yelled out that he was being treated like Rodney King. Smith, who is black, felt that he was being abused by the officers, who were white. According to Officer McCluskey, a crowd of young men had begun to gather in response to Smith's yelling, "causing a potentially volatile and uneasy situation." Smith only disputes that he "cursed the officers." Following this episode, Officer McCluskey charged Smith with disorderly conduct.

In all, Officer McCluskey issued Smith two citations. One was a $220 citation for violation of South Carolina Code § 56-5-3160(a), which prohibits pedestrians from walking upon a roadway where an adjacent sidewalk is provided and its use is practicable, and the other was a $445 citation for violation of City of Myrtle Beach Code of Ordinances § 14-61, which prohibits breaches of the peace, including disorderly conduct, public drunkenness, and "loud

and boisterous" conduct. Smith was released the day after his arrest. Following a jury trial in December 2001, Smith was acquitted of both charges.

Shortly thereafter, Smith commenced this action under 42 U.S.C. § 1983 against Officer McCluskey and Officer Doe, an unidentified police sergeant who had been involved in Smith's arrest. Smith alleged that the officers violated his Fourth Amendment rights to be free from false arrests, malicious prosecutions, excessive force, and warrantless arrests by arresting him without probable cause. He also alleged that his First Amendment right to freedom of speech was violated by the officers' citing him for disorderly conduct allegedly based on his verbal protests to the arrest. Officer Doe was never identified, and the case proceeded solely against Officer McCluskey.

On Officer McCluskey's motion for summary judgment asserting qualified immunity, the district court granted it in part and denied it in part. Preliminarily, the court observed that because Smith's deposition "shows that [Officer] McCluskey did not use excessive force against him[, t]he only sustainable causes of action . . . against McCluskey . . . are (1) the Fourth Amendment claims of false arrest, malicious prosecution, and warrantless arrest, [and] (2) the First Amendment claim." The court then concluded that, since "a reasonable officer would have believed that the plaintiff had violated" the South Carolina pedestrian-

roadway statute, Officer McCluskey had probable cause to arrest Smith for that violation and therefore was entitled to summary judgment as to Smith's Fourth Amendment claims associated with that arrest. Finally, the court analyzed the claims associated with the disorderly conduct charge. Conceptualizing this second charge as a second "arrest," the court concluded that the facts that Mr. Smith "became argumentative and challenged his arrest" and that his "breath smelled of alcohol" were insufficient to give Officer McCluskey probable cause to "arrest" Smith for disorderly conduct. The court also concluded that Officer "McCluskey could not reasonably have believed that he had probable cause to arrest [Smith]" and that "an officer in McCluskey's position could not reasonably have thought his actions comported with the First Amendment." Accordingly, the court denied Officer McCluskey's motion with respect to Fourth and First Amendment claims associated with the disorderly conduct "arrest."

From the district court's interlocutory order granting in part and denying in part qualified immunity, Officer McCluskey appealed and Smith cross-appealed. Officer McCluskey contends that the district court erred by denying him qualified immunity for the claims associated with the disorderly conduct charge, and Smith contends that the district court erred by granting McCluskey qualified immunity for the claims associated with his arrest.

In considering qualified immunity, we consider two sequential questions. The first is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If a constitutional right is found to have been violated, the second question is whether the right was clearly established. Id. And our inquiry on the second question "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. Thus applying the Supreme Court's qualified immunity jurisprudence, our first inquiry is whether the facts alleged -- taken in the light most favorable to Smith -- show that Officer McCluskey violated Smith's constitutional rights by arresting him under the South Carolina pedestrian/roadway statute.

Officer McCluskey arrested Smith for violating South Carolina Code § 56-5-3160(a), which states that "[w]here a sidewalk is provided and its use is practicable, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway." Section 56-5-460 defines "roadway" as "that portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of the shoulder." Taking the facts in the light most favorable to Smith, we assume that he at the most stepped down onto

the concrete portion of the roadway that serves as its gutter and curb.

Notwithstanding the questions of whether this concrete-gutter portion is part of the "roadway" and whether standing upon it constitutes "walk[ing] along and upon" a roadway, we conclude that Officer McCluskey had probable cause to believe that Smith violated the statute. Officer McCluskey need not have known with certainty of such a violation; rather, he merely must have had "facts and circumstances within [his] knowledge . . . sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that [Smith] ha[d] committed . . . [the] offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). Officer McCluskey observed Smith interacting with the motorcycle passenger, who was herself located in the roadway, and Smith concedes that he may have stepped down off of the sidewalk. These facts and circumstances are sufficient to cause a reasonable officer to believe that the pedestrian/roadway statute had been violated. Consequently, Officer McCluskey's arrest of Smith without a warrant did not violate the Fourth Amendment, even though the nature of the offense might be considered minor in nature. See Maryland v. Pringle, 540 U.S. 366, 370 (2003); Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).

Since there could have been no constitutional violation on the facts alleged, "there is no necessity for further inquiries

-10-

concerning qualified immunity."  See Saucier, 533 U.S. at 201.

Officer McCluskey is entitled to immunity from Smith's claims

stemming from the arrest, and we therefore affirm the district

court's decision granting McCluskey summary judgment as to these

claims.


                                III

        The district court denied Officer McCluskey summary

judgment as to Smith's First and Fourth Amendment claims stemming

from the disorderly conduct charge.  Our threshold inquiry

continues to be whether, taking the facts as alleged by Smith,

Officer McCluskey violated Smith's constitutional rights by

charging him with disorderly conduct under the City of Myrtle Beach

ordinance.  See Saucier, 533 U.S. at 201.

        First, we conclude that the district court erred in

treating this second charge as a second "arrest," because Smith was

already under arrest pursuant to probable cause at the time Officer

McCluskey decided to charge him under the city ordinance.  Smith

therefore has no cognizable Fourth Amendment claims associated with

this second charge.  His Fourth Amendment claims of false arrest

and warrantless arrest fail in the absence of an associated arrest,

and a malicious prosecution claim under § 1983 "is simply a claim

founded on a Fourth Amendment seizure that incorporates elements of

the analogous common law tort of malicious prosecution."  Lambert

<u>v. Williams</u>, 223 F.3d 257, 262 (4th Cir. 2000).  With no associated seizure, there can be no cognizable malicious prosecution claim.

This leaves Smith's First Amendment claim, in which Smith asserts that he was unconstitutionally charged for disorderly conduct solely on the basis of his conversational opposition to his arrest.  We conclude that Officer McCluskey's decision to charge Smith with disorderly conduct was made on the basis of facts and circumstances independent of any expression protected by the First Amendment.

Officer McCluskey issued Smith a citation under City of Myrtle Beach Code of Ordinances § 14-61, which makes it a crime "for any person to commit any breach of the peace, conduct himself in a disorderly manner, be publicly drunk or under the influence of intoxicating beverages, be loud and boisterous or conduct himself in such a manner as to disturb the peace and quiet of the public." It is undisputed that, following Smith's arrest, there was physical interaction between Smith and the officers.  According to Officer McCluskey, Smith was instructed to remain seated on the curb, but he kept returning to a standing position; and each time Smith raised himself, officers had to force him back down to the curb. In response to what he perceived to be police brutality, Smith began yelling that the officers were "treating him like 'Rodney King.'"  In response to the yells, Officer McCluskey recalled, a crowd of young men had begun to gather, "causing a potentially

-12-

volatile and uneasy situation." We conclude that Smith's refusal to comport with the officers' reasonable demands to remain in place and his yells, along with the circumstances of the potentially volatile crowd, were sufficient to warrant a reasonable officer in believing that Smith was "conduct[ing] himself in a disorderly manner" or "in such manner as to disturb the peace." City of Myrtle Beach, S.C., Code of Ordinances § 14-61; see also DeFillippo, 443 U.S. at 37.

While "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," City of Houston v. Hill, 482 U.S. 451, 461 (1986), and simple conversational opposition to an arrest might well fall into this category, speech "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest" is not protected by the constitution, id. (quoting Terminiello v. City of Chicago, 337 U.S. 1, 4 (1949)) (internal quotation marks omitted). According to Officer McCluskey, and not disputed by Smith, there was such a clear and present danger of crowd violence in response to Smith's belligerent conduct and his calls of "Rodney King," which presumably led the crowd to believe that Smith was a victim of race-motivated police brutality.

Since Smith's Fourth and First Amendment rights were not violated by being charged with disorderly conduct, Officer

-13-

McCluskey is also entitled to qualified immunity from Smith's claims related to that charge.  See Saucier, 533 U.S. at 201.  We therefore reverse the district court's denial of summary judgment on these claims.

IV

In short, Officer McCluskey is entitled to qualified immunity from all claims asserted by Smith in this action.  The district court's order is therefore affirmed in part and reversed in part.

AFFIRMED IN PART AND REVERSED IN PART

GREGORY, Circuit Judge, concurring in the judgment:

Although I concur in the judgment, I write separately because I believe that this matter should be decided solely on the narrow ground that the existence of probable cause to arrest Smith for violation of the pedestrian in the roadway ordinance is fatal to his First and Fourth Amendment claims.

The majority opinion affirmed the district court's finding that probable cause existed for Officer Mcluskey to arrest Smith for violating the pedestrian in the roadway ordinance. I am of the opinion that this finding effectively resolves all of the claims before us. As the Fifth Circuit recently noted, "'[i]f there was probable cause for any of the charges made ... then the arrest was supported by probable cause and the claim for false arrest fails.'" R.C. Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001). Similarly here, because there was probable cause for the arrest, Smith's First and Fourth amendment claims must fail.

For that reason, and that reason alone, I concur in the judgment.

-15-