MEIERHENRY, Justice
(dissenting).
[¶49.] I disagree with the majority that the drug dog’s admittedly nonaggres- • sive response as recorded in the video supports a finding of probable cause. The officer determined probable cause to open the trunk existed when his drug dog, that has been inaccurate in detecting drugs almost 50% of the time, circled the vehicle, paused at the back of the vehicle and after encouragement from the officer merely nipped indistinctly at the bottom of the bumper even though the dog was trained to react aggressively when detecting drug odors. This is another questionable drug dog case leading down a slippery slope towards diminishing a citizen’s protection against unreasonable search and seizure guaranteed under the United States and South Dakota Constitution.
[¶ 50.] Probable cause to search is judged against an objective standard. The United States Supreme Court has described probable cause to search “as existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.” Ornelas v. U.S., 517 U.S. 690, 696, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996). The Court also said that “the probable-cause standard is a ‘practical,’ nontechnical conception’ that deals with ‘the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.’ ” Maryland v. Pringle, 540 U.S. 366, 124 S.Ct. 795, 800, 157 L.Ed.2d 769 (2003) (quoting Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Thus, in our review, our standard is that of a reasonable and prudent person. Additionally, decisions approving the use of dogs to detect narcotics in traffic stops presupposes “the use of a well-trained narcotics-detection dog-one that ‘does not expose noncontraband items that otherwise would remain hidden from public view.’ ” Illinois v. Caballes, 543 U.S.. 405, 409, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005) (citing U.S. v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983)).
[¶ 51.] It is obvious that dogs can be of great assistance to law enforcement in detecting such things as drugs or bombs. Anyone that has been around dogs knows that dogs can be trained to react to smells by exhibiting very obvious actions such as. growling, barking, scratching, pointing, sitting, lying or other trained behavior. These trained reactions are of such a nature that even a casual observer could recognize that the dog was reacting to something, perhaps pointing at a bird in the brush, barking at an intruder, or scratching at the trunk of a vehicle. In fact, officers regularly bring their dogs to citizen groups to demonstrate the drug sniffing skills of their dogs. Inevitably the *886 trained dogs react in a manner obvious to the crowd. A video shown on South Dakota Public Broadcasting (SDPB) demonstrating this particular dog’s skills was introduced into evidence. In the SDPB video one can see the dog clearly, overtly and aggressively reacting to the smell of drugs hidden in the wall behind a light switch. The dog became extremely animated, began to bark, and jumped up on the wall to scratch at the light switch. A reasonable and prudent person could easily have concluded that the dog detected an odor of drugs behind the light switch just by watching the dog’s behavior.
[¶ 52.] Why is it then so difficult to determine if this same trained drug dog actually is indicating when out in the field? Why does the dog’s reactions in the field become so obscure that we need experts on either side to interpret what the dog is “thinking?” See supra ¶ 28, n. 6. Common sense should tell us that when “a well-trained narcotics-detection dog” does not react by exhibiting its trained aggressive response, the dog’s behavior fails to provide probable cause to open a citizen’s trunk.
[¶ 53.] A review of the trooper’s video tape shows nothing close to aggressive scratching or biting or barking by Kaz. The sniffing dog circles the vehicle, pauses in spots but never scratches. It pauses briefly at the trunk of the vehicle and only after the officer says “gift” to the dog does it show an interest in the trunk and then only by very briefly nipping at the bumper part of the vehicle under the trunk. The majority opinion describes what happens in the video.
When [the dog] approaches the trunk area, Kaz stops. This time his body becomes perpendicular to the vehicle. Kaz continues to actively sniff the trunk area, moving his nose up and down, with his tail wagging. Trooper Koltz leaves slack in Kaz’s leash, and can be seen looking at Kaz. The trooper mouths some words. Kaz then appears to be biting at the fender part of the vehicle under the trunk.
Supra ¶ 8. Kaz’s response is clearly different from his response to drugs in the SDPB video. In fact, nothing about Kaz’s bumper biting could be viewed as “aggressive behavior.”
[¶ 54.] Although the dog’s reaction to Nguyen’s vehicle is not an observable aggressive indication, the majority determines that the trial court’s finding is not clearly erroneous. The only evidence that the nibbling on the bumper constituted an indication by Kaz came from the officer’s subjective interpretation of the dog’s behavior. Even the trooper admitted that Kaz did not aggressively indicate but explains that Kaz would have but for the trooper pulling him away and placing him back in the patrol car. The trooper’s claim was that he stopped Kaz from scratching the trunk because of some unofficial rumored rule, the likes of which were not offered into evidence. Under these circumstances, the trial court’s findings that Kaz’s behavior provided probable cause is clearly erroneous. In fact, it appears that the trial court interchanges the terms “alert” and “indication” and considered an “alert” sufficient to constitute probable cause. The trial court made the following findings:
41. Once a trained drug dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle.
42. Trooper Koltz had probable cause to search Tam Thi Thu Nguyen’s *887 vehicle based upon the objectively observable indication of his properly trained and certified drug detection dog, “Kaz.”
Perhaps, Kaz’s biting at the fender was an “alert.” In the vernacular of the trainers, an alert is different from an indication, and only an indication actually signifies that the dog smells drugs. What Kaz does in the video is not an indication. If he was about to indicate, he was prevented from doing so according to the trooper’s own testimony. Thus, we are left without an observable “indication,” only the subjective interpretation by the trooper of what he thinks the dog was about to do. When a “well-trained narcotics-detection dog” smells drugs, its trained response should be obvious not only to its handler but also to a reasonable and prudent person.
[¶ 55.] To approve probable cause under the facts of this case turns the standard from the objective standard of a reasonable and prudent person to a subjective standard based upon the personal interpretation and belief of the officer. Any drug dog response observed by the officer could constitute probable cause as long as the officer testified that he believes that the “new” untrained response, barely visible to anyone but the officer, meant the dog had indicated. No matter how many experts testify concerning their interpretations of the video, the video stands on its own. Any reasonable and prudent person can see that the dog’s actions do not constitute an aggressive indication. Any finding to the contrary is clearly erroneous. If the drug dog does not react as it was trained to react, the dog’s other canine behavior cannot establish probable cause. In this case there is no dispute that the dog was trained to indicate aggressively. Kaz’s reaction of biting the fender does not constitute aggressive indication and, as a matter of law, does not establish probable cause.
[¶ 56.] What is at stake here is a citizen’s constitutional right against unreasonable search and seizure. The facts must be such as to warrant a reasonably prudent person to believe that probable cause exists. I would reverse and remand on this issue and leave for another day the issue on certification.
[¶ 57.] SABERS, Justice, joins this dissent.