Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★         ★ ★ ★

## MEMORANDUM OPINION

No. 04-07-00383-CR

Richard **RODRIGUEZ**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-5571
Honorable Sharon MacRae, Judge Presiding

**OPINION ON STATE'S MOTION FOR REHEARING**

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Alma L. López, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice, concurring without opinion

Delivered and Filed:    August 29, 2008

AFFIRMED

After considering the State's motion for rehearing, and Rodriguez's response, we grant the State's motion for rehearing, withdraw our prior opinion and judgment issued on April 9, 2008, and substitute this opinion and judgment.

On appeal, Richard Rodriguez, Jr. challenges the revocation of his community supervision. Because we conclude that the State proved its allegation that Rodriguez possessed a controlled

substance, we affirm the trial court's judgment revoking Rodriguez's community supervision and sentencing him to eight years' imprisonment.

## BACKGROUND

Rodriguez was indicted for possession of more than one gram but less than four grams of cocaine. Pursuant to a plea bargain agreement, Rodriguez pled nolo contendere and was placed on eight years of community supervision. A few months later, the State filed a motion to revoke Rodriguez's community supervision, alleging that he committed the following two violations: (1) possessing a controlled substance; and (2) failing to maintain gainful employment. At the hearing on the motion to revoke, Rodriguez pled "not true" to both allegations. After hearing testimony from several witnesses, the trial court found both allegations to be "true," revoked Rodriguez's community supervision, and sentenced Rodriguez to eight years' incarceration.

## ANALYSIS

In a hearing on a motion to revoke community supervision, the State bears the burden to prove its allegations by a preponderance of the evidence. *Rickels v. State*, 202 S.W.3d 759, 763-64 (Tex. Crim. App. 2006). The State meets its burden when the greater weight of the credible evidence creates a reasonable belief that the defendant violated a condition of his community supervision. *Id*. at 764. We review the trial court's judgment revoking community supervision under an abuse of discretion standard. *Id.* at 763. We indulge all reasonable inferences in a light favorable to the trial court's ruling, *Jones v. State*, 589 S.W.2d 419, 421 (Tex. Crim. App. [Panel Op.] 1979), and sustain the order of revocation if the evidence substantiates a single violation. *Jones v. State*, 571 S.W.2d 191, 193-94 (Tex. Crim. App. [Panel Op.] 1978).

### POSSESSION OF A CONTROLLED SUBSTANCE

Rodriguez argues on appeal that the State's evidence was insufficient to prove he violated either condition of his community supervision. As to the first alleged violation, Rodriguez contends the State: (1) failed to prove the items seized from Rodriguez were controlled substances; and (2) failed to establish that Rodriguez was in possession of a controlled substance.

The evidence developed at the revocation hearing showed that, on the evening in question, two police officers stopped a vehicle in an apartment parking lot for a welfare check; there were three occupants in the vehicle, and Rodriguez was the front-seat passenger. Officer Sense observed the driver and Rodriguez making "unnecessary movements" in the front seat of the vehicle at the time of the stop. Officer Sense testified that through the car window he observed the backseat passenger holding, in plain view, a large baggie of white powder that appeared to be cocaine. All three occupants were subsequently removed from the vehicle. While Officer Oliva was patting down Rodriguez, Officer Sense saw "a small baggie with . . . tiny clear crystals" fall out of Rodriguez's pant leg. Officer Oliva similarly testified that when he patted down Rodriguez, a small baggie of a controlled substance fell out of Rodriguez's pant leg. Oliva also testified that he saw the female driver of the vehicle throw down a clear bag containing a white substance as she exited the vehicle. Officer Pryde, who was called to the scene for back-up, testified that he searched Rodriguez after his arrest and found "a small, clear baggie of powdery white substance" inside Rodriguez's sock. Pryde testified that Rodriguez said the bag was not his. Officer Pryde also testified that Rodriguez told him the three occupants had "found this stuff and that they knew it was worth something but they didn't know what it was, they were just holding it for somebody." Officer Sense testified that

all of the drugs found on Rodriguez and the other occupants in the vehicle field-tested positive for controlled substances. A pipe was also recovered from inside the vehicle.

A chemist, Mark Florence, testified at the revocation hearing that he tested and weighed all of the substances seized during the vehicle stop. Rodriguez argues on appeal that Florence did not positively identify all of the seized materials as controlled substances because Florence used the word "alleged" when describing the contents of three out of the four manila evidence envelopes. We agree. When asked about the contents of envelope number one, Florence responded that it contained "one plastic bag of methamphetamine" in the amount of 0.756 grams. However, with respect to envelope numbers two and four, Florence testified that they contained, respectively, "one plastic bag of alleged meth" in the amount of 0.405 grams, and "alleged meth weigh[ing] out 2.812 grams." When asked whether the contents of envelope number three "tested positive[] for cocaine," Florence replied "5.307 grams." While the trial court might have reasonably inferred from Florence's answer that envelope number three contained a confirmed quantity of cocaine, the trial court could not have reasonably inferred from Florence's testimony that the substances in the other two envelopes (envelopes two and four) were confirmed to be controlled substances.

The State argues that Florence's testimony, combined with the officers' testimony about the circumstances of the seizure and the positive field test results for all the substances seized, is sufficient to prove by a preponderance of the evidence that all of the seized substances were confirmed controlled substances. The State made a similar argument in *Curtis v. State*,[1] an appeal from a motion to revoke community supervision based on possession of a controlled substance. However, the Court of Criminal Appeals rejected the State's sufficiency of the evidence assertion

---

[1] *Curtis v. State*, 548 S.W.2d 57 (Tex. Crim. App. 1977).

because it was based solely on the officer's testimony that the substances he seized field-tested positive for a controlled substance. *Curtis*, 548 S.W.2d at 58-59. The Court concluded that, without the substantiating testimony of a chemist who had tested the seized substances in a lab and confirmed they were controlled substances, field testing alone was not enough to meet the preponderance of the evidence standard. *Id.* at 59. Here, although the chemist who performed the lab tests did testify, he failed to positively confirm that each of the items seized from the vehicle was a controlled substance; further, he stated he did not know which particular quantities were seized from which occupant. Therefore, at most, viewing the evidence in the light most favorable to the trial court's ruling, the State proved that only two of the four evidence envelopes contained controlled substances.

We must next consider whether there is sufficient evidence affirmatively linking Rodriguez to the two confirmed controlled substances — the 5.307 grams of cocaine and the 0.756 grams of methamphetamine. To prove that Rodriguez violated his community supervision by possessing a controlled substance, the State had to prove by a preponderance of the evidence that Rodriguez: (1) exercised control, management, or care over the substance; and (2) knew the matter possessed was contraband. TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (Vernon 2003); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). When a defendant is not in exclusive possession of the place where contraband is found, as here where we may not assume the confirmed contraband was seized from Rodriguez's person but from several occupants within a vehicle, then independent facts and circumstances must affirmatively link the defendant to the drugs. *Poindexter*, 153 S.W.3d at 405.

> Mere presence at the location where drugs are found is . . . insufficient, by itself, to establish actual care, custody, or control of those drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., "links"), may well be sufficient to establish that element beyond a reasonable doubt.

*Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). It is the logical force of all the evidence, both direct and circumstantial, that is dispositive, not simply the number of links. *Id.*

A non-exclusive list of possible "affirmative links" that Texas courts have recognized as sufficient, either singly or in combination, to establish a person's possession of contraband includes: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id.* at 162 n.12. Each link is not to be viewed in isolation, but in combination with all the other direct and circumstantial evidence, and reasonable inferences flowing from the evidence. *Id.* at 166. "In deciding whether the evidence is sufficient to link the defendant to contraband, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony." *Poindexter*, 153 S.W.3d at 405.

Here, Rodriguez was not only present at the time of the search, he was in an enclosed space and in close proximity with convenient access to the confirmed drugs, which gives rise to an inference he had knowledge of and control over the drugs. *See Maryland v. Pringle*, 540 U.S. 366, 371-72 (2003) (holding it was reasonable to infer that all three vehicle passengers had knowledge of, and exercised control over, the five baggies of cocaine found behind the backseat armrest to which they all had access); *see also Robinson v. State*, 174 S.W.3d 320, 326 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ("'conveniently accessible' means that the contraband must be within the close vicinity of the accused and easily accessible while in the vehicle so as to suggest the accused had knowledge of the contraband and exercised control over it"). Moreover, the largest quantity seized, the "large baggie of white powder," was confirmed to be cocaine and was being held in plain view in the backseat passenger's hands. Drug paraphernalia consisting of a pipe was also found inside the vehicle. These facts support a reasonable inference that Rodriguez had knowledge of and control over the drugs. In addition, one of the officers observed Rodriguez make "unnecessary movements" at the time of the stop, raising an inference that he was trying to conceal or dispose of contraband. Further, Rodriguez's statements to Officer Pryde repeatedly telling him that the stuff "wasn't his," and he was just "holding it for somebody," indicate a consciousness of guilt — an attempt to avoid being blamed for possessing an illegal item. In addition, Rodriguez had a large amount of cash, $600, on his person, which he stated was his paycheck; however, considered with the other circumstances, the presence of $600 in cash on Rodriguez's person lends some support to the inference of knowledge and control over the drugs. Finally, Rodriguez admitted that at the time of the stop he was on probation for a similar offense, possession of cocaine.

Viewing the evidence in the light most favorable to the trial court's order and keeping in mind the lesser preponderance of the evidence standard of proof, we conclude that these facts, in combination, provide sufficient logical force to establish that Rodriguez knowingly possessed a controlled substance, in violation of the terms of his community supervision. *See Evans*, 202 S.W.3d at 161 n.9 (legal issue with respect to "links" analysis is "whether there was evidence of circumstances, in addition to mere presence, that would adequately justify the conclusion that the defendant knowingly possessed the substance"); *see also Robinson*, 174 S.W.3d at 326 (noting convenient access within an enclosed space, and affirming possession conviction of front-seat passenger in truck where cocaine was located in back wall compartment of truck). Because we affirm the revocation of Rodriguez's community supervision based on his possession of a controlled substance, we need not address Rodriguez's challenge to the sufficiency of the other alleged violation, failure to maintain gainful employment. *Jones*, 571 S.W.2d at 193-94 (proof of any one alleged violation is sufficient to support an order revoking community supervision).

## Conclusion

Having found sufficient evidence that Rodriguez violated a condition of his community supervision by possessing a controlled substance, we affirm the trial court's judgment revoking Rodriguez's community supervision and imposing an eight-year sentence.

Phylis J. Speedlin, Justice

DO NOT PUBLISH