NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-10539 |
| Plaintiff-Appellee, | D.C. No. 1:15-cr-00242-DKW-1 |
| v. | |
| ROMAN GABRIEL CONTRERAS, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
Derrick Kahala Watson, District Judge, Presiding

Argued and Submitted October 10, 2017
Honolulu, Hawaii

Before: SCHROEDER, D.W. NELSON, and McKEOWN, Circuit Judges.

Roman Gabriel Contreras ("Contreras") appeals his conviction for attempting to possess 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

The district court did not err in denying Contreras's motion to suppress evidence found in his checked luggage at Kauai's Lihue Airport. *See United States v. Rodgers*, 656 F.3d 1023, 1026 (9th Cir. 2011).

Under the totality of the circumstances, the U.S. Drug Enforcement Administration ("DEA") agents had reasonable suspicion to stop Contreras at the airport. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002). The DEA and the Kauai Police Department received two anonymous tips about Contreras trafficking methamphetamine. One tipster accurately foretold Contreras's flight from Los Angeles to Kauai, and offered a precise description of the bag in which the tipster thought the drugs were being carried (a black handbag "not made of leather"). Officers watched Contreras walk past the baggage claim area with such a carry-on bag even though he traveled with two checked bags, all while repeatedly looking over his shoulder. Contreras then brought the carry-on bag toward the black tow truck described by the other tipster as Contreras's drug-selling vehicle. Anonymous tips such as these are sufficiently reliable to support reasonable suspicion when they are detailed, predict the suspect's future movements, and are verified firsthand by police. *United States v. Morales*, 252 F.3d 1070, 1076-77 (9th Cir. 2001).

The officers then conducted a reasonable investigatory stop of Contreras to confirm or dispel whether he was carrying methamphetamine in his carry-on bag.

*See United States v. Christian*, 356 F.3d 1103, 1105 (9th Cir. 2004). DEA Special Agent Jones asked Contreras to walk with him 15 to 20 feet and sit down in another public area so a narcotics dog could sniff his bag. The entire encounter—from initial questioning to the dog's sniff—lasted five to six minutes. The district court did not clearly err in finding that "Jones did not touch Contreras, except to assist him with removing his carry-on bag, which had become entangled with an article of Contreras'[s] clothing." *See Rodgers*, 656 F.3d at 1026. Despite his claim to the contrary, Contreras was not arrested prior to the dog's alert.

Once the dog alerted to Contreras's carry-on bag, the officers had probable cause to arrest Contreras. *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003). The dog's alert was reliable because "all the facts surrounding [it], viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 248 (2013). The government provided extensive records of the dog and his handler's narcotics detection certifications and training. Such evidence "can itself provide sufficient reason to trust [the dog's] alert" and creates a presumption of reliability. *Id.* at 246-47. Defense counsel had a meaningful opportunity to call the dog's handler as a witness, which comports with the Supreme Court's guidance that defendants be allowed to challenge the dog's reliability. *Id.* at 247. Nothing except speculation supports Contreras's claim that Jones touching the carry-on

before the dog sniff "possibly contaminated [the bag]." And, the dog's 0-for-2 performance on Contreras's luggage does not show that the dog was unreliable under the circumstances because we ought not over-read episodic misses in the field, and we "do not evaluate probable cause in hindsight, based on what a search does or does not turn up." *Id.* at 249.

The magistrate judge did not clearly err in finding probable cause to issue a warrant for all of Contreras's luggage. *See United States v. Grant*, 682 F.3d 827, 832 (9th Cir. 2012). A magistrate judge need only "answer the commonsense, practical question whether there is probable cause to believe that contraband or evidence is located in a particular place before issuing a search warrant." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc) (internal quotation marks omitted). Here, there was probable cause. The government's affidavit in support of the warrant provided, among other things, information about the two tips, the dog's alert, and the dog's certifications and training records.

**AFFIRMED**.