**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4004-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TIMOTHY M. CHAMBERS,

     Defendant-Appellant.

_____

Submitted February 27, 2025 – Decided April 1, 2025

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 15-09-0630.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Alison Gifford, Assistant Deputy Public Defender, of counsel and on the briefs).

William A. Daniel, Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Timothy Chambers appeals from an August 14, 2023 order denying his motion to compel post-conviction discovery. We affirm.

After defendant robbed a carwash by gunpoint, he was convicted by a jury of first-degree robbery, N.J.S.A. 2C:15-1. The court imposed a life sentence on the State's motion for a mandatory life term in accordance with N.J.S.A. 2C:43-7.1(a). We affirmed defendant's conviction and sentence, State v. Chambers (Chambers I), No. A-3785-17 (App. Div. July 14, 2020), and the Supreme Court denied defendant's petition for certification, State v. Chambers, 244 N.J. 283 (2020).

The court denied defendant's subsequent petition for post-conviction relief (PCR) in which he claimed his trial counsel provided ineffective assistance due to an alleged failure to move for a speedy trial and properly cross-examine the State's witnesses. He also argued trial counsel's opening statement prejudiced his right to a fair trial and appellate counsel failed to raise issues previously set forth in his pro se brief. Defendant further maintained the State withheld alleged exculpatory evidence from the jury and that he was subject to an unconstitutional search and seizure. We affirmed, see State v. Chambers (Chambers II), No. A-0878-21 (App. Div. May 24, 2024), and the Supreme Court again denied defendant's petition for certification. State v. Chambers, 259 N.J. 313 (2024).

2

We detail the relevant facts and procedural history from the motion record, our prior decisions, as well as from the proceedings related to defendant's motion to suppress physical evidence seized at the time of his arrest. At the suppression hearing, the arresting officer testified the robbery was captured on a video surveillance camera and showed both robbers, one a tall, heavy-set black male. He also stated, while on patrol in Hillside, he recognized a car described in a recent alert in connection with a string of armed robberies, which included the carwash robbery the month before.

Believing the car was the one used in the robberies, the officer followed the vehicle for a few blocks until it pulled over in front of a house in Newark. The officer then pulled behind it and called for backup before walking over to the driver's door. The driver, a woman, provided the officer with registration and insurance cards but could not produce a license. The officer thought the front seat passenger, a large, heavy-set black man later identified as defendant, generally matched the description of one of the two suspects in the robberies.

As the officer spoke to the driver, defendant leaned over and asked the driver something about why they were stopped. As he leaned forward, the officer noticed he reached toward his feet and appeared to conceal an object on the floor. Believing that defendant was one of the suspects in the carwash

robbery, and knowing police had not recovered the gun used in that robbery, the officer asked defendant to get out of the car immediately after backup arrived. As other officers walked defendant to the rear of the car, the arresting officer inspected the floor in front of defendant's seat. In addition to the driver, another passenger remained in the back seat while the officer conducted that protective sweep of the interior.

The officer stated he saw some garbage on the floor, and just in front of the seat, a dirty washcloth. He further testified he lifted the washcloth to see if defendant had hidden a weapon under it. Instead of a weapon, the officer found drug paraphernalia, specifically two crack pipes. Defendant was arrested and consented to a search of the trunk, where officers found a jacket and boots that linked him to the carwash robbery.

At trial, the State presented evidence defendant, and another man robbed the manager of a carwash at gun point. In addition, the victim testified defendant struck him with the gun during a struggle over a bag of quarters. As noted, the entire assault was captured on video surveillance. The State also introduced the jacket and boots it seized from the trunk of the car.

A-4004-22

Prior to filing the motion to compel that is the subject of this appeal,[1] defendant contacted the Union County Prosecutor's Office seeking information related to his arrest and was directed to his "legal representative for [his] discovery." After defendant contacted his trial and PCR counsel, he received copies of the complaint-warrants with "many blank and incomplete pages." Defendant's PCR counsel thereafter requested the Hillside Township Municipal Court produce "the full (unredacted) documents . . . ." After failing to receive complete unredacted copies, defendant filed the aforementioned application in which he specifically sought "original copies of the complaint-warrants and summons-warrant—W-2015-000238, W-2015-000239, and S-2015-000236— that were issued when [defendant] was originally arrested and charged . . . ."[2]

In response, defendant maintains the State provided him with only the first page of each summons-complaint and complaint-warrant. In a letter brief in support of defendant's motion, his counsel explained:

> [Defendant] has never received original copies of the summons-warrant for which he was originally arrested and the two complaint-warrants that followed the search of his car. [Defendant] plans to challenge

---

[1] Defendant's motion to compel is not included in the record before us.

[2] W-2015-000238 is the complaint-warrant underlying the robbery charge; W-2015-000239 is the complaint-warrant underlying the weapons charges; and S-2015-000236 is the summons-complaint underlying the drug charges.

5

whether there was probable cause to believe that an offense was committed, . . . but cannot do so without original copies of these warrants. Because the State never originally turned over these warrants, as evidenced by the fact that they are not included in [defendant's] trial file or in the possession of the Office of the Public Defender, the State must provide complete, unredacted, original copies of the 2015 warrants that provide the basis for [defendant's] original arrest.

The State ultimately produced copies of the complaint-warrants. In each document, however, the affidavit of probable cause and the preliminary law enforcement incident report were blank. Additionally, the first page of each document differed from the first pages of the copies defendant originally received. Specifically, although the copies defendant received of the complaint-warrants were physically signed by Detective "Cosimo Tripoli," and the judicial officer issuing the warrant, the State's copies included only electronic signatures from Detective Tripoli and a "judicial officer."

Further, defendant's copies of the complaint-warrants contain the date "NJ/CDR2 8/1/2005" in the bottom right corner, while the State's version contains the date "NJ/CDR2 1/1/2017." Similarly, with respect to the summons-complaint on the drug charges, defendant's version contains the date "NJ/CDR1 8/1/2005," while the State's version contains the date "NJ/CDR1 1/1/2017."

6

At the hearing on defendant's motion, the State explicitly represented to the court "all discovery was provided." While the State did not address all the discrepancies in the produced documents, it did explain why defendant's version contained physical signatures whereas its copies contained only electronic ones. According to the State, Detective Tripoli "signed a second copy of the certification under oath," and detectives at the time were "required to physically sign them . . . ."

The court denied defendant's motion to compel and explained its decision in an oral opinion. The court credited the State's representation it had provided defendant with all discovery and explained to defendant the State had turned over "everything that they ha[d]."

Before us, defendant contends he "is entitled to pages two through seven of the defense version of the complaints . . . [and] because the State failed to provide [defendant] with that discovery, the decision below . . . must be reversed." Contending he intends to file a second PCR petition, defendant argues he requires the documents in order to meet the requirements of Rule 3:22-4(b)(2)(B) and (C). Specifically, defendant maintains if the complaints contain information "undermining the basis for [his] arrest, PCR counsel should have considered an [ineffective assistance of counsel] claim against trial or appellate

counsel." Alternatively, if the complaints contain exculpatory information that was not disclosed in discovery, defendant maintains he may have grounds to assert a Brady violation.[3]

Defendant also relies on our Supreme Court's decision in State v. Hannah, 248 N.J. 148 (2021), and argues "without all the original discovery, there is no way for a defendant to know whether he has viable PCR claims." Defendant also distinguishes State v. Szemple, 247 N.J. 82 (2021), contending he "is not seeking hypothetical discovery that may not exist. Rather, [he] is seeking the original complaints in his case." Defendant further contends the State failed to meet its discovery obligation as it did not produce all seven pages of defendant's version of the complaints (i.e., the copies containing physical signatures).

We review a motion judge's decision on a discovery issue for abuse of discretion. Szemple, 247 N.J. at 97 ("[P]ost-verdict discovery requests fall within the discretion of the trial court."). As a result, we do not disturb the judge's ruling unless it is "so wide of the mark" or "based on a mistaken understanding of the applicable law." Id. at 94 (quoting State ex rel. A.B., 219 N.J. 542, 554 (2014)). The trial court's legal conclusions are reviewed de novo. State v. Nash, 212 N.J. 518, 540-41 (2013).

---

[3] Brady v. Maryland, 373 U.S. 83 (1963).

Post-conviction discovery requests are "not granted automatically." Szemple, 247 N.J. at 97. Rather, an "analysis of any motion . . . must . . . necessarily consider the proposed use to which the discovery would be put." Id. at 103. "[T]he State is not required post-conviction to allow defendants to '"fish" through official files for belated grounds of attack on the judgment, or to confirm mere speculation or hope that a basis for collateral relief may exist.'" Id. at 107 (quoting State v. Marshall, 148 N.J. 89, 270 (1997)). "If it is impossible for [the] defendant to prevail on his ultimate claim for relief— even should the requested discovery prove favorable to his cause—then there is no need to separately analyze the discovery request . . . ." Id. at 104.

A trial court has discretion to grant post-conviction discovery "when justice so requires." Id. at 97 (quoting Marshall, 148 N.J. at 269). "But courts invoke that discretion 'only in the unusual case,' in recognition of the importance of finality." Ibid. (internal citations omitted) (quoting Marshall, 148 N.J. at 269-70).

Applying our deferential standard of review and against the aforementioned legal principles, we are convinced the court did not abuse its discretion and properly denied defendant's motion to compel.

A-4004-22

First, in light of the record, we disagree with defendant's assertion the information contained in the "original copies" of the complaints may lend themselves to an ineffective assistance of counsel claim related to the stop and search. As noted, we previously addressed the validity of the stop and concluded the officer's search of defendant's vehicle was lawful, see Chambers I, slip op. at 8-10; see also R. 3:22-5 ("A prior adjudication upon the merits of any ground for relief is conclusive . . . ."), and later affirmed the court's denial of his PCR petition, see Chambers II, slip op. at 5-6. The record before us fails to raise any questions regarding the stop and subsequent search or that it proceeded in a manner other than how the arresting officer testified to at the suppression hearing. Defendant's arguments are based on mere speculation unsupported by competent proofs.

Indeed, it is well-established a police officer may effectuate "a warrantless arrest of a defendant in a public place provided the officer has probable cause to believe the defendant committed a crime." State v. Basil, 202 N.J. 570, 584 (2010) (citing Maryland v. Pringle, 540 U.S. 366, 370 (2003)). Here, defendant was lawfully arrested after an officer stopped his vehicle due to an outstanding alert and subsequently discovered drug paraphernalia during a lawful protective sweep. Chambers I, slip op. at 2-4. Further, to the extent defendant challenges

10

the complaint-warrant, we deem those arguments unpersuasive because any defect was cured by the indictment. See R. 3:3-4.

Second, as the court recognized, the State represented to the court it fully complied with defendant's request. While the first page of defendant's copy of the complaints differs from the State's version in terms of the signatures and dates at the bottom right-hand corner, the substance of the first pages is identical. Nothing in the record supports defendant's speculation that the State is in possession of any additional relevant and responsive documents.

Finally, we reject defendant's reliance on Hannah. In that case, the defendant was convicted of two counts of felony murder following a trial that largely turned on the testimony of a co-defendant, the prosecution's key witness, who testified that he and Hannah had shot and killed two individuals. Hannah, 248 N.J. at 155. In his PCR petition, Hannah argued the jury was deprived of considering relevant evidence as a result of trial counsel's failure to present two pieces of exculpatory evidence in his counsel's possession that implicated another person as the killer. Id. at 162-63, 176-77. The Court ultimately concluded defendant "clearly established" both prongs under Strickland v. Washington, 466 U.S. 688 (1984), and that the cumulative effect of trial counsel's errors, "combined with those made by the trial court and prosecutor,"

ultimately deprived defendant of "his constitutional right to present a complete and credible third-party-guilt defense." Id. at 155, 182-90.

The circumstances presented in Hannah do not exist here. First, as noted, Hannah addressed a PCR ineffective assistance of counsel claim; it did not address a post-conviction motion to compel. Second, Hannah concerned trial counsel's failure to introduce exculpatory evidence within its possession. It did not address a post-conviction application to compel under the standards detailed in Szemple, which we are convinced defendant has failed to satisfy.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-4004-22