NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2958
_____

TIM HAMBORSKY,
                                        Appellant

v.

THOMAS O'BARTO; LARRY MEDLOCK
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-12-cv-00428)
District Judge:  Honorable Terrence F. McVerry
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 2, 2015

Before:  FISHER, JORDAN, and SHWARTZ, *Circuit Judges*.

(Filed: June 4, 2015)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

    Tim Hamborsky appeals an order of the United States District Court for the

Western District of Pennsylvania entering summary judgment against him on his claims

for malicious prosecution and conspiracy.  He specifically argues that the District Court

_____

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

erred in finding that there was probable cause to institute a prosecution against him. We disagree and will affirm.

## I. Background

### A. Factual Background

On November 5, 2008, Hamborsky, who was a Correctional Officer employed by the Fayette County Prison, concealed a bag containing snuff tobacco, Vicodin pills, and cash in his jacket and smuggled it into the prison. Unbeknownst to Hamborsky, he was the target of a sting operation. Erin Spade, an inmate serving a sentence in the prison and the person to whom Hamborsky had agreed to deliver the contraband, had previously approached the then-Warden, Larry Medlock, with information implicating Hamborsky in criminal acts. Spade told Medlock that Hamborsky had smuggled contraband into the prison for him in the past. Spade suggested that, if Medlock would talk to the district attorney about reducing pending charges against him, Spade would work with Medlock to expose Hamborsky as a smuggler.

After his conversation with Spade, Medlock contacted Detective Thomas O'Barto of the Fayette County Drug Task Force. Medlock and O'Barto met with Spade, and Spade stated that he could arrange for Hamborsky to smuggle drugs and tobacco into the prison. The three of them agreed to arrange an undercover effort to catch Hamborsky.

Spade met with Hamborsky and instructed him to pick up a package on November 5, 2008, that would be concealed underneath a newspaper vending machine near the Fayette County Courthouse, which was close to the prison. At around 11:30 p.m. on the appointed day, Hamborsky retrieved the package. It contained tobacco, four Vicodin

pills, and $75 in cash. Hamborsky concealed the package in the left shoulder of his coat and proceeded into the prison. Once he was inside the prison, Medlock and O'Barto stopped and escorted him to the office of then-District Attorney Nancy Vernon. Hamborsky admitted to bringing the package into the prison for Spade but he denied knowing illegal drugs were in the package. He was then arrested, questioned, and eventually arraigned by video and freed on bond pending trial.

Hamborsky was charged in state court with possession of a controlled substance, possession with intent to deliver a controlled substance, and transporting contraband. At the preliminary hearing, Spade gave the following testimony:

> Q: What did you tell the officer?
>
> A: That I can have Mr. Hamborsky bring some tobacco or whatever I basically wanted him to bring in.
>
> Q: Now, what did you mean by "or whatever I basically wanted him to bring in"?
>
> A: Drugs or tobacco or snuff or whatever.

(App. at 352-53.) Important to Hamborsky's argument in this case, Spade also offered the following testimony:

> Q: Had you informed the officer that he had done this in the past?
>
> A: I have heard it in the jail. He never brought it to me in the past, but I heard it in the jail, yes.

(*Id*. at 353.)

The matter went to trial and the jury returned a verdict of not guilty.

3

**B. Procedural History**

Hamborsky initiated this action on April 3, 2012, asserting claims against Medlock, O'Barto, Vernon, and Fayette County. The Complaint raised five causes of action: (1) a claim under 42 U.S.C. § 1983, based on the Fourth and Fourteenth Amendments, for malicious prosecution; (2) fabrication of false evidence; (3) a conspiracy claim; (4) state-law claims for malicious prosecution against Vernon, Medlock, and O'Barto; and (5) a claim under *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978), against Fayette County. On September 4, 2012, the defendants moved to dismiss. In lieu of responding, Hamborsky agreed to voluntarily withdraw his fabrication-of-false-evidence claim and dismiss all of his claims against Vernon and Fayette County. On November 16, 2012, he filed an Amended Complaint asserting three causes of action: (1) a section 1983 malicious prosecution claim against O'Barto; (2) a section 1983 conspiracy claim against Medlock and O'Barto; and (3) a state-law malicious prosecution claim against O'Barto.

After the close of discovery, Medlock and O'Barto moved for summary judgment, which the District Court granted. The District Court noted that, at the time Hamborsky was charged, "O'Barto knew that Plaintiff had discussed bringing some type of contraband into the prison for Spade …; he knew that Plaintiff retrieved a bag from under the newspaper vending machine and brought it into the prison; and he discovered that the bag contained Vicodin, which is a controlled substance under Pennsylvania law." (App. at 9.) "Viewing the circumstances from the perspective of an objectively reasonable officer," the District Court stated that "there was probable cause for [Hamborsky's]

4

prosecution" and, as a result, his "malicious prosecution claims must fail." (*Id.* at 9, 12.) In addition, because Hamborsky failed to establish an underlying violation of his constitutional rights, the District Court concluded that Medlock and O'Barto were also entitled to summary judgment on the section 1983 conspiracy claim. Hamborsky timely appealed.

## II.    Discussion[1]

In order to make out a claim of malicious prosecution under the Fourth Amendment,[2] a plaintiff must prove that the defendant initiated a criminal proceeding, the criminal proceeding ended in the plaintiff's favor, the proceeding was initiated without probable cause, the defendant acted maliciously or for a purpose other than

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's grant of summary judgment *de novo*, *Alcoa, Inc. v. United States*, 509 F.3d 173, 175 (3d Cir. 2007), and must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all doubts in favor of that party, *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

[2] Hamborsky's complaint also invokes the Fourteenth Amendment in his claim for malicious prosecution. Medlock and O'Barto argue that it is probably premised on a substantive due process violation, which cannot form the basis for a malicious prosecution claim under section 1983. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000). We think that, instead, Hamborsky is citing the Fourteenth Amendment simply for its incorporation of the Fourth Amendment against the state-actor defendants.

5

bringing the plaintiff to justice, and the plaintiff suffered a deprivation of liberty consistent with the concept of "seizure" as a consequence of a legal proceeding.[3] *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005).

Hamborsky argues that the District Court erred by taking the probable cause inquiry away from a jury because the facts of this case strongly suggest that there was no probable cause to initiate the prosecution. He asserts that the following facts, when viewed in a light most favorable to him, preclude entry of summary judgment for Medlock and O'Barto: "there was no investigation that indicated Hamborsky was bringing drugs into the prison"; Spade was a career criminal looking for a deal to reduce his exposure to criminal liability; Hamborsky maintained from the time of the arrest that Spade never told him there would be Vicodin pills in the bag; Spade had "testified twice" that Hamborsky had never provided him drugs before; and O'Barto had good reasons to believe that Hamborsky was not aware of the Vicodin pills and he doubted Hamborsky knew about the pills.

Contrary to Hamborsky's view, the District Court properly entered summary judgment against him on the malicious prosecution claims. Simply put, he has not fairly addressed the District Court's opinion nor rebutted its reasons for concluding that there

---

[3] As mentioned above, Hamborsky also asserted a state-law malicious prosecution claim against O'Barto. Under Pennsylvania law, the first four elements of the federal malicious prosecution claim are identical to the state-law tort claim. *Kossler v. Crisanti*, 564 F.3d 181, 186 n.2 (3d Cir. 2009) (en banc). As a result, the analysis of those elements of the federal claim applies equally to the Pennsylvania tort claim.

was probable cause to prosecute him.[4]  In order for his malicious prosecution claims to survive summary judgment, Hamborsky was required to produce evidence that he was prosecuted without probable cause; that is, that there was no "reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks omitted).  The following facts, which were before O'Barto and Medlock at the time the prosecution was commenced, confirm that there was probable cause to prosecute Hamborsky for the charged crimes: Spade contacted Medlock to inform him that Hamborsky was smuggling contraband into the prison; Spade told Medlock that Hamborsky would provide him with anything, including controlled substances; Spade told Medlock that Hamborsky had delivered contraband to him in the past; Medlock had suspicions about Hamborsky because he had intercepted inmate communications that referenced a person named "Tim" or "Hambone" as a correctional officer who provided contraband to inmates; O'Barto met with Spade and, subsequently, Spade arranged for Hamborsky to smuggle contraband into the prison; O'Barto viewed video surveillance and witnessed Hamborsky perform all of the acts Spade told O'Barto that he would ask Hamborsky to perform; and O'Barto viewed video surveillance and witnessed Hamborsky conceal the package in his jacket and carry it into the prison.

Hamborsky does not dispute any of those facts.  Instead, he argues that they are insufficient to create reasonable grounds for believing that he was guilty of the charged crimes given his repeated statements that Spade never told him that the bag would

---

[4] Because we conclude that there was probable cause to prosecute, we need not address the parties' other arguments as to malicious prosecution or qualified immunity.

7

contain Vicodin and given his subsequent acquittal at trial. Hamborsky also focuses on a factual discrepancy that he believes creates a genuine issue of material fact: O'Barto and Medlock both said that Spade told them that Hamborsky brought him drugs in the past, but Spade testified at the preliminary hearing and at trial that he had not previously received drugs from Hamborsky.

We do not agree with Hamborsky's arguments. First, while Spade was not completely credible and may even have lied to O'Barto when he told O'Barto that he had arranged for Hamborsky to smuggle narcotics into the prison, the fact remains that Spade told O'Barto that he did so and Hamborsky actually did smuggle narcotics into the prison during the sting. O'Barto's belief that Hamborsky was guilty of the charged crimes was reasonable. Second, while it is true that, at the preliminary hearing, Spade recanted a statement he allegedly made to Medlock and O'Barto – namely, that Hamborsky had previously smuggled contraband for Spade – that recantation came later. When the decision to prosecute Hamborsky was made, Spade's claim was both credible and unrebutted. Indeed, Spade got Hamborsky to do precisely what Spade had said he had done before. After witnessing Hamborsky pick up a bag containing tobacco, Vicodin, and $75 cash and then surreptitiously carry it into the prison, there were reasonable grounds for O'Barto and Medlock to believe that Hamborsky was guilty of the charged crimes. Therefore, probable cause existed to institute the prosecution, and Hamborsky's malicious prosecution claims fail.

Given our conclusion that the malicious prosecution claims fail, Hamborsky's conspiracy claim must also fail because there is no underlying violation of his

constitutional rights, which is a prerequisite for conspiracy liability. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999) (stating that "civil conspiracy requires a separate underlying tort as a predicate for liability").

## III.     Conclusion

For the foregoing reasons, we will affirm the District Court's entry of summary judgment against Hamborsky.