[Cite as *State v. Hopkins*, 2021-Ohio-2662.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. Craig R. Baldwin, P. J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2020 CA 35 |
| RYEISHA C. L. HOPKINS | |
| | |
| Defendant-Appellant | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 19 CR 303 |
| | |
| JUDGMENT: | Affirmed |
| | |
| DATE OF JUDGMENT ENTRY: | August 3, 2021 |


APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee | For Defendant-Appellant |
| | |
| CHRISTOPHER A. REAMER | JAMES E. YOUNG |
| R. KYLE WITT | CONRAD/WOOD |
| PROSECUTOR'S OFFICE | 120 East Main Street |
| 239 West Main Street, Suite 101 | Suite 200 |
| Lancaster, Ohio 43130 | Lancaster, Ohio 43130 |

*Wise, J.*

{¶1} Appellant Ryeisha C. L. Hopkins appeals her conviction entered in the Fairfield County Court of Common Pleas following a plea of guilty to one count of trafficking in marijuana.

**STATEMENT OF THE FACTS AND CASE**

{¶2} The relevant facts and procedural history are as follows:

{¶3} On April 23, 2019, Officer Kevin Shively of the Reynoldsburg Police Department was dispatched to the IHOP restaurant in the city of Reynoldsburg, Fairfield County, Ohio around midnight. (Supp. T. at 12). Officer Shively is an 11-year law enforcement veteran of the Reynoldsburg Police Department and previously served with the U.S. Border Patrol in narcotics investigations. (Supp. T. at 8-9). The dispatch involved a couple that left without paying the bill for their meal at IHOP, and who were described as leaving in a small black sedan. (Supp. T. at 12-13). Officer Shively was very close to the area and stopped the black sedan before it got to the main street exit of the IHOP. (Supp. T. at 14-15). The car was registered to Appellant Ryeisha Hopkins, who was seated in the passenger seat. (Supp. T. at 17-18). Officer Shively initially approached the passenger side of the vehicle and made contact with Appellant Hopkins, the registered owner. (Supp. T. at 25). Appellant only opened her window approximately six inches and Officer Shively stated that he did not smell the odor of marijuana upon his initial approach. (Supp. T.at 25). Officer Shively then approached the driver of the vehicle, Ricardo Henderson, who was removed from the vehicle to speak with Shively. (Supp. T. at 18). Upon investigation, it was discovered that Henderson was not a valid driver, as he had failed to have his driver's license reinstated. (Supp. T. at 18).

**{¶4}** Officer Shively waited for several minutes with Henderson and Appellant Hopkins for an IHOP employee to come to the scene and advise as to whether IHOP wanted to press charges. (Supp. T. at 25-26). After the IHOP employee came to the scene and declined to press charges, Officer Shively began to address the issue of Henderson's traffic infraction. (Supp. T. at 26). Officer Shively ultimately issued a citation to Henderson for the traffic infraction to Reynoldsburg Mayor's Court. (Supp. T. at 31).

**{¶5}** Knowing that he could not allow Henderson to drive the vehicle away from the scene, Officer Shively re-approached Appellant Hopkins at the passenger side of the vehicle. (Supp. T. at 27).

**{¶6}** Officer Shively asked Appellant Hopkins to exit the passenger side and opened the passenger side door. (Supp. T. at 28). Appellant indicated that she did not want to exit the passenger side, instead suggesting she would "swing myself over." (Supp. T. at 43). Almost contemporaneously with opening the passenger side door, Officer Shively smelled the odor of raw marijuana. (Supp. T. at 28).

**{¶7}** Based on the odor of marijuana, Officer Shively proceeded to conduct a search of the vehicle, discovering a bag of what was believed to be marijuana in the glove compartment of the vehicle, along with cash, and another container behind the passenger seat containing what was believed to be marijuana which was packaged for sale. (Supp. T. at 22-24).

**{¶8}** At the time Officer Shively re-approached Appellant Hopkins on the passenger side of the vehicle, he had not yet issued Henderson's traffic infraction ticket. (Supp. T. at 26). From the time he stopped the vehicle to the time he opened the passenger side door, approximately 11 minutes had elapsed. (Supp. T. at 31).

**{¶9}** On April 23, 2019, Appellant was charged with trafficking in marijuana, in violation of R.C. §2925.03(A)(2), to which she entered a plea of not guilty.

**{¶10}** On or about February 2, 2020, Appellant filed a Motion to Suppress arguing, *inter alia*, that there was no probable cause to conduct a search of Appellant's vehicle.

**{¶11}** On June 22, 2020, an oral hearing was held on Appellant's Motion to Suppress, wherein the only witness to testify was Officer Kevin Shively of the Reynoldsburg Police Department, the arresting officer.

**{¶12}** On June 30, 2020, Appellant filed a post-hearing memorandum, and on July 17, 2020, the State filed their post-hearing memorandum.

**{¶13}** On July 28, 2020, the trial court overruled Appellant's Motion to Suppress.

**{¶14}** On November 12, 2020, Appellant entered a no contest plea to the trafficking in marijuana charge.

**{¶15}** Appellant now appeals, assigning the following error for review:

## ASSIGNMENT OF ERROR

**{¶16}** "I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."

## STANDARD OF REVIEW – MOTION TO SUPPRESS

**{¶17}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See, State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995); *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court

must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long,* 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas, supra*. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

## I.

{¶18} In her sole assignment of error, Appellant argues that the trial court erred in finding that she was lawfully detained and that law enforcement had authority to enter and search the vehicle. We disagree.

{¶19} The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Because arrests are "seizures" of "persons," they must be reasonable under the circumstances*. See, Payton v. New York,* 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence. *Atwater v. Lago*

*Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). In *District of Columbia v. Wesby,* the United States Supreme Court defined the standard as follows,

> To determine whether an officer had probable cause for an arrest, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (*quoting Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). Because probable cause "deals with probabilities and depends on the totality of the circumstances," 540 U.S., at 371, 124 S.Ct. 795, it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules," *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.*, at 243–244, n. 13, 103 S.Ct. 2317 (1983). Probable cause "is not a high bar." *Kaley v. United States,* 571 U.S. ——, ——, 134 S.Ct. 1090, 1103, 188 L.Ed.2d 46 (2014). ——U.S.——, 138 S.Ct. 577, 586, 199 L.Ed.2d 453 (2018).

**{¶20}** The Ohio Supreme Court has adopted a similar standard. In *State v. Perez,* the Ohio Supreme Court noted,

> Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. *Adams v. Williams* (1972), 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612. Rather, probable cause is a "practical, nontechnical conception,"

*Brinegar v. United States* (1949), 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879, that "turn[s] on *the assessment of probabilities in particular factual contexts.*" *Illinois* v. Gates (1983), 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527.

**{¶21}** 124 Ohio St.3d 122, 2009-Ohio-6169, 920 N.E.2d 104, ¶73 (emphasis in original).

**{¶22}** "Probable cause" is a lesser standard of proof than a "beyond reasonable doubt" standard. "An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4538, 894 N.E.2d 1204, ¶ 17. The question of whether a defendant might have a possible defense to a charge is irrelevant in our analysis of whether an officer has probable cause to initiate an arrest. *Id.*

**{¶23}** Appellant herein argues that the officer in this case did not have probable cause to search the vehicle because the traffic stop had ended and she was no longer being detained.

**{¶24}** At the suppression hearing, the trial court found that "[t]he record does not reflect that Ofc. Shively articulated to the Defendant or the driver that they were free to leave, and the Defendant has not provided evidence to indicate that the traffic stop was otherwise terminated."

**{¶25}** Upon review of the record, we agree with the trial court.

**{¶26}** When an individual in a motor vehicle is lawfully detained, a police officer may order the driver out of the vehicle, even though the officer does not suspect that the driver has engaged in criminal activity and the officer cannot articulate a reasonable

suspicion that prompted the action. *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331, 337; *State v. Evans,* 67 Ohio St.3d 405, 1993–Ohio–186, 618 N.E.2d 162.

**{¶27}** The United States Supreme Court has stated that asking a lawfully stopped motorist to exit his vehicle is a de minimis intrusion that does not even rise to the level of a "petty indignity," finding that such a mere inconvenience cannot outweigh all of the legitimate concerns for officer safety, which the officer need not express or fear in a particular case. *Pennsylvania v. Mimms, supra.* "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Id.* at fn. 6 (where defendant was stopped for expired license plate).

**{¶28}** If reasonable suspicion thereafter arises, an officer can proceed with other investigatory steps that require reasonable suspicion such as the pat-down in *Mimms* or search of the vehicle, as in this case). *See Mimms,* 434 U.S. at 111–112 (where officer ordered driver out of car without reasonable suspicion beyond the stop itself and then viewed a bulge in jacket resulting in reasonable suspicion for pat down). We note that these rules even apply to passengers. *Maryland v. Wilson,* 519 U.S. 408, 413–415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (even though reasonable suspicion for the traffic stop itself is only attributable to the driver, passengers can be ordered out for no reason).

**{¶29}** The Ohio Supreme Court has agreed with the rationale in *Mimms* and explained that *Mimms* dispenses with the requirement that the officer possess reasonable suspicion of criminal activity before he orders the driver out of an already

lawfully stopped vehicle. *State v. Evans,* 67 Ohio St.3d 405, 407–408, 618 N.E.2d 162 (1993) (stop for burned out headlight). A *Mimms* order is not a stop or seizure separate and distinct from the original traffic stop and "does not have to be justified by any constitutional quantum of suspicion." *Id.* at 408.

**{¶30}** "Accordingly, the ordering of defendant to get out of his car was proper even if the officers were unable to articulate a reasonable suspicion which prompted this action." *Id. See also State v. Lozada,* 92 Ohio St.3d 74, 81, 748 N.E.2d 520 (2001) (officer can order driver of a lawfully stopped car and the passengers out of vehicle regardless of any supporting reasons); *State v. Robinette,* 80 Ohio St.3d 234, 239, 68 N.E.2d 762 (1997) (instruction for speeding motorist to exit vehicle was justified under *Mimms* because it was a traffic stop; and then addressing continued detention after stop was over).

**{¶31}** Moreover, it is also well-established an officer's ulterior motives do not invalidate otherwise permissible police conduct under the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 812, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Robinette,* 80 Ohio St.3d 234, 239, 685 N.E.2d 762 (1997) (subjective motivation for continuing a detention is irrelevant). "Thus, the question whether a Fourth Amendment violation occurred in this case depends upon an objective assessment of the officer's actions at the time of the traffic stop, and not upon the officer's actual (subjective) state of mind." *Dayton v. Erickson,* 76 Ohio St.3d 3, 6, 66 N.E.2d 1091 (1996). Accordingly, a traffic stop with the proper standard of evidence is valid regardless of the officer's underlying ulterior motives as the test is merely whether the officer "could" have performed the act

complained of; pretext is irrelevant if the action complained of was permissible. *Id.* at 7, 11.

**{¶32}** Therefore, here, merely because the officer wanted to facilitate the passenger's exit from the passenger side of the vehicle to the driver's side of the vehicle, which is why he asked Appellant to exit the vehicle, this does not invalidate the request to exit the vehicle because a request to exit a vehicle during a traffic stop is not subject to constitutional inquiry; it is merely an acceptable continuation of the original traffic stop. *See Evans,* 67 Ohio St.3d at 408 (removal from car is not a separate and distinct act from the traffic stop). As removal from a vehicle during a lawful traffic stop is permissible without any supporting suspicion for the removal itself, the officer's subjective motivation for ordering the defendant out of the lawfully stopped vehicle is not a consideration, just as it is not considered in determining the validity of the stop itself.

**{¶33}** Thus, events occurring upon exiting are permissibly considered in the evaluation of whether there exists reasonable suspicion to search. *See, e.g., State v. Sarno,* 2d Dist. No. 25751, 2013–Ohio–5058, ¶17–20 (whether officer smelled marijuana before, during, or after the driver's removal from the vehicle was irrelevant because the *Mimms* order during a lawful traffic stop requires no reasonable suspicion and fact that officer admitted that he ordered the driver out to conduct field sobriety tests is irrelevant under *Whren* and *Erickson*); See *State v. Koczwara*, 7th Dist. Mahoning No. 13 MA 149, 2014-Ohio-1946, ¶¶ 18-22.

**{¶34}** Here, because the driver of the vehicle was being lawfully detained, the officer was entitled to ask Appellant, the passenger, to exit the vehicle. Once Appellant's car door was opened, the odor of marijuana became readily apparent to the officer. At

that juncture, the officer had probable cause to search the vehicle and subsequently arrest Appellant for trafficking in marijuana.

{¶35} While Appellant argues that the traffic stop in this case had ended and that she was no longer being detained by the officer, we do not find support for same in the record. The officer in this case had not yet written or issued Henderson's citation. Officer Shively approached Appellant in regard to her driving the vehicle, rather than having same impounded, prior to the issuance of the citation. Further, only approximately eleven minutes had elapsed from the time of the stop until the opening of the passenger-side door, which we do not find to be an unreasonable detention in this case.

{¶36} We further find that the statement made by Officer Shively that he was going to cite the driver for failure to reinstate and that he was then going to have the passenger drive away was not an indication that the traffic stop had been concluded or that Appellant was free to leave. Rather, he was stating his intention for after the citation was issued and the stop concluded. Officer Shively never told Appellant she was free to leave, nor did she ever state that she wanted to leave.

{¶37} Accordingly, we find no error in the trial court's denial of Appellant's motion to suppress. Appellant's sole assignment of error is overruled.

**{¶38}** For the forgoing reasons, the judgment of the Court of Common Pleas of

Fairfield County, Ohio, is affirmed

By: Wise, J.

Baldwin, P. J., concurs.

Hoffman, J., dissents.


JWW/kw 0719

*Hoffman, J., dissenting*

**{¶39}** I respectfully dissent from the majority opinion. I would sustain Appellant's sole assignment of error and order the evidence seized suppressed. My reasons follow.

**{¶40}** I begin by taking issue with the majority's and trial court's finding the record does not reflect Officer Shively articulated to the Appellant she was free to leave. During the direct examination of Officer Shively, he was asked specifically on this point:

Q. Had you - - now you walked to the passenger side of the vehicle [the officer's second interaction with Appellant] and made a statement to Ms. Hopkins, did you not?

A. That is correct. (Tr. Pg 26, line 23 through Tr. Pg. 27, line 2).

**{¶41}** And later during cross-examination:

Q. And it was at that point [again the officer's second interaction with Appellant], you were walking around the back side of the vehicle and you made the statement, something to the effect of: "I'm going to cite Ricardo for the failure to reinstate.

A. Correct.

Q. And then I'm going to have the Defendant [Appellant] in the passenger seat drive away.

A. That is correct.

* * *

Q. So you went up to the car and you said "you're free to go," essentially; correct?

A. If she was willing to drive, yes.

Q. [S]he has nothing tying her there. She could have left… correct?

A. Yeah, she could have.

* * *

Q. You went over and you said, "you're free to go. Drive away." Correct?

A. Yes. At that point, yeah.

{¶42} (Tr. Pg. 33, line 21 through Pg. 35, line 24).

{¶43} I agree with the majority, Officer Shively had the legal authority to order the driver and passenger out of the vehicle when the motor vehicle has been lawfully detained, as was the situation here, pursuant to *Pennsylvania v. Mimms* (1977), 434 U.S. 106, and *Maryland v. Wilson*, (1977), 519 U.S., 408.

{¶44} While I concede the traffic stop had not ended as it pertains to the detention of Henderson because Officer Shively had not yet issued him the citation, it had ended as it pertains to Appellant. The U.S. Supreme Court has recognized the temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene and inform the driver and passengers they are free to leave. *Arizona v. Johnson* (2009), 555 U.S. 323. Applying this precedent to the case sub judice, I find the seizure of Appellant ended when Officer Shively informed her she was free to go, as

her continued presence was not necessary to complete the issuance of the citation to Henderson.

**{¶45}** I find the opening of Appellant's passenger door an impermissible search as no probable cause existed to search the car. It matters not whether the officer did so merely as a courtesy. The smell of marijuana was evident only after the door was opened by the officer. Had he not done so, he would not have been in the position to have smelled the marijuana. Apparently, Appellant intended to exit another door or perhaps planned on moving over to the driver's seat after she had been told she was free to leave. Regardless of her intention or plan, the officer's action in opening the door resulted in a search without the existence of probable cause and occurred after Appellant was no longer being lawfully detained.